GEORGE TATE v. MICHAEL TORCOUTT.

*Chattel mortgage — Contract — Pleading — Amendment — Directing verdict — Waiver.*

1. Where, on sustaining an objection to the introduction in evidence of a written contract because not specially declared upon, leave is given to the plaintiff to amend the declaration, and the court suggests to the plaintiff that the better way to test the question is to have a verdict directed in favor of the defendant, and then go to the Supreme Court, and the plaintiff acquiesces in the suggestion, and consents that a verdict may be directed against him, he waives his right to amend the declaration, and cannot assign as error the refusal of the court to permit him to do so.

2. Where the purchaser of a portion of the property covered by a chattel mortgage agrees in writing with the mortgagee safely to keep and care for the property so purchased until the mortgage debt matures, and then to deliver it to the mortgagee, or pay him a specified sum, if he fails to recover the full amount his due out of the remainder of the property, the plaintiff must specially declare upon the agreement in a suit to recover damages for its breach.

Error to Newaygo. (Palmer, J.) Submitted on briefs April 11, 1894. Decided May 18, 1894.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*James Brassington,* for appellant.

*L. G. Rutherford,* for defendant.

LONG, J. November 18, 1890, the plaintiff loaned to one Alpheus Tibbitts $150, and to secure the money he took from Tibbitts a chattel mortgage on a quantity of personal prop;y, among which was a span of horses. Before the mortgᵻe became due, Tibbitts, contrary to the terms of it, removed the horses out of the county of Oceana, where the mortgage was given, and sold them to the defendant, who lived at that time in the county of Newaygo. The plaintiff, learning of that fact, on January 5, 1891, went to the defendant's residence, where a written agreement was drawn up between them, as follows:

"This agreement, made and entered into on this 5th day of January, 1891, as follows, to wit: Michael Torcoutt hereby agrees that he will safely keep and care for a certain span of horses heretofore mortgaged by Alpheus Tibbitts to George Tate [until such mortgage becomes due, and that he will then deliver them over to said George Tate, or pay the sum of $65, provided the said Tate shall fail to recover the full amount of his due out of the balance of the property covered by such mortgage].

"Dated at Beaver, Mich., this 5th day of January, 1891.
"[Signed] MICHAEL TORCOUTT.
"Witness: A. J. SPENCER."

The words inclosed in the brackets had a pencil line drawn through them, and interlined in pencil were the words, "Not agreed to." When the mortgage became due, the plaintiff went to the defendant's place of residence, and took the horses into his possession, and drove them back into Oceana county. Torcoutt thereupon replevied them from Tate. The suit was tried in Oceana county, and a verdict found in favor of Torcoutt. No

appeal was taken from this judgment, and Torcoutt retained the horses. Tate thereafter advertised and sold the balance of the property covered by the chattel mortgage, which sale did not bring sufficient to satisfy his demand under the mortgage, and he then made demand for the horses, which demand was refused. He then brought suit in justice's court against the defendant on the common counts in *assumpsit.* On the trial of this cause in the circuit court, the plaintiff, having shown the facts herein recited, offered in evidence the contract, the chattel mortgage, notice of sale, etc., which were objected to on the ground that they were inadmissible under the pleadings. The court sustained the objection, and stated:

"From the statement of the counsel representing the plaintiff, giving in detail the facts and circumstances upon which he relies to support the declaration in this case, my judgment is that the declaration is not sufficient to admit any evidence, and I therefore hold the objection good."

The court further said to plaintiff's counsel:

"Do you want me to direct a verdict in this case, or what course will you pursue?"

*Plaintiff's Counsel:* "We will ask leave to amend the declaration."

*Defendant's Counsel:* "We object to it. There is nothing here to amend."

*The Court:* "The trouble is, they claim, upon the other side, the declaration does not state a cause of action. It states the cause of action upon a common-count declaration. It might, but for the statement of counsel. I am inclined to think I will allow you to amend the declaration, if you desire to, upon the usual terms, and I will leave it optional with the other side to go to trial at this term or the next term. The better way is, if you wish to test this, to have me direct a verdict, and you may then go to the Supreme Court."

*Plaintiff's Counsel:* "I think so, and you may direct a verdict."

Upon the state of facts in the case as presented upon the record before us, the agreement between the parties

was as set forth in the writing. It was upon this agreement that the plaintiff was entitled to recover, if at all. He had demanded the horses. His chattel mortgage covered them, and the balance of the property had been found to be insufficient to meet his demand. In his declaration he had set out the full writing, and claimed that that was the agreement which defendant had signed. That question was submitted to the jury in the Oceana county trial of the replevin suit, in which the court directed the jury as follows:

"Plaintiff claims that on or about the 5th day of January, 1891, defendant entered into the written agreement of that date which has been received and admitted in evidence, and read in your hearing. Defendant denies that he made such an agreement, and insists that he did not, but struck out a part of it, and only assented to a part of it. * * * The main question in the case is as to what, if any, agreement was made between the parties. If you are satisfied, from a fair preponderance of the testimony, that defendant assented and agreed to the written agreement, and to the whole of it, then the plaintiff was entitled to the possession of the property until defendant did what he agreed to in that written agreement, and your verdict should be for plaintiff. If you find that the defendant did not agree and assent to the whole of said written agreement, then your verdict should be for the defendant, if you find that he took the property from plaintiff, as he claims, under and by virtue of the chattel mortgage, and because it had been violated as defendant claims."

It was claimed by the plaintiff in that suit (Mr. Torcoutt) that the whole writing was to be read together as constituting the agreement between the parties, and, if the jury found that to be the contract, it removed the lien of the mortgage upon the horses, but that if the property remaining in the hands of the mortgagor failed to satisfy the mortgage, and plaintiff in that suit refused or neglected to pay the difference, not to exceed $65, then Tate would be entitled, under this agreement, to take the horses and sell them, and keep enough to satisfy the balance due upon

the mortgage, and pay Torcoutt any balance over that amount. Mr. Tate's theory was—and he was defendant in that case, but plaintiff .in the present one—that he assented only to that part of the writing which remained after striking out the words through which the pencil lines were drawn. It appears from the verdict of the jury that they found in favor of the plaintiff's theory; that is, that the whole writing constituted the agreement between the parties. That question is therefore settled, and we must regard the contract in the present suit as made up of the whole writing. According, when the plaintiff in the present case made his demand for the payment of the moneys due under the contract, or the delivery of the property, Mr. Torcoutt was in duty bound to surrender the property or to pay the amount, not exceeding $65, which Mr. Tate failed to realize by the sale of the other property covered by the chattel mortgage. But Mr. Torcoutt had his option either to pay the amount or deliver up the horses. He refused to do either. The plaintiff's remedy, therefore, was an action for breach of the contract, and his damages would be the amount which he failed to realize from the sale of the balance of the mortgaged property, not exceeding $65; or he might have had the right to replevy the property, and subject it to sale under his mortgage, and, after realizing the amount his due, pay over the balance to Mr. Torcoutt. If he brought his action for breach of contract, he should have declared specially upon the contract, and for the breach. He could not recover under the common counts in *assumpsit.*

As counsel for plaintiff assented that the verdict might be directed, he waived his right to amend his declaration, and has now no reason to complain of the action of the court.

Judgment is affirmed.

The other Justices concurred.