STATE ex rel. RAILROAD AND WAREHOUSE COMMISSION v. NORTH-ERN PACIFIC RAILWAY COMPANY.[1]

May 29, 1903.

Nos. 13,369—(19).

## Sale of St. Paul & Duluth Railroad.

The charter of the Lake Superior & Mississippi Railroad Company authorized the company to construct and maintain a railroad to commence at some convenient place within the state of Minnesota at the west end of Lake Superior, and thence running by the most feasible route within this state to some point on the Mississippi river. The St. Paul & Duluth Railroad Company succeeded to the interests of the charter company, and in 1900 transferred its franchises, road, and property to the Northern Pacific Railway Company, appellant, which company assumed all the obligations of the grantor then existing in favor of the state of Minnesota, the people of the state, and the Board of Railroad and Warehouse Commission. Appellant's contract of purchase also stated that the terminal facilities at Duluth should never be less adequate than at the date of purchase.

[1] Reported in 95 N. W. 297.

### Station Closed and Route of Trains Changed.

Thirteen years prior to the purchase a station had been established at Twentieth avenue in Duluth, which was continually maintained as such, with an agent, and a regular freight and passenger business conducted therein, and all passenger trains, with one exception, stopped there for the accommodation of passengers. Twentieth avenue was a center of business and population about 1.3 miles from the Union Depot in Duluth, and that portion of the city was somewhat cut off from the main portion, contiguous to the Union Depot. After the purchase appellant closed the station, and ran all of its passenger trains via West Superior, Wisconsin; leaving the main line in Minnesota at a point about six miles from the Union Depot, and returning again by Rice's Point into the Duluth Union Depot.

### Mandamus.

In an action in mandamus by the Railroad and Warehouse Commission to compel appellant to open and maintain the station, and to run all of its passenger trains via that station on the Minnesota side, *held*,

### Findings of Court Sustained.

1. The finding of the trial court is sustained by the evidence that the business community in the vicinity of the Twentieth Avenue Station has been seriously affected by the closing of the station; that the traffic facilities and terminals, as enlarged and improved by appellant since the purchase of the road, have not inured to the benefit of the special locality in question, within the meaning of the obligations assumed by the contract of purchase, and the facts as found sustain the order of the court that appellant be required to reopen and maintain such station, with an agent therein, as formerly.

### Construction of Charter.

2. Under the charter appellant is required to operate and maintain the original line of road between St. Paul and the Union Depot in Duluth, within the state of Minnesota, as its main line, whereon shall be conducted the substantial part of its passenger business between such terminals and intermediate points. But the charter does not necessarily require that all passenger trains be so operated. If the people of the state of Minnesota, St. Louis county, the city of Duluth, and special localities peculiarly situated are furnished with reasonably adequate accommodations, the charter permits any reasonable adjustment of the trains which will at the same time serve the interests of the public having business relations with West Superior, subject to the qualification that the railroad shall remain at all times under the jurisdiction of the state of Minnesota. What constitutes such reasonable adjustment

is a question of fact for the determination of the Board of Railroad and Warehouse Commission, and it follows that, if necessary to operate the road within the rule above stated, then all of the trains may be required to run on the Minnesota side.

## Decision of Lower Court.

3. Appellant's grantor, the St. Paul & Duluth Railroad Company, up to the time of the purchase, had always operated its trains on the Minnesota side by way of the Twentieth Avenue Station, constituting that road its main line for through traffic and passenger service. Prima facie, such arrangement was necessary, and was made with the approval of the Railroad and Warehouse Commission; and, since appellant transferred its trains by way of West Superior, as a strict matter of right, without making application to the commission for a reasonable adjustment, the decision of the trial court was correct in ordering the original system of running trains to be reinstated.

Alternative writ of mandamus issued from the district court for St. Louis county, upon relation of the Railroad and Warehouse Commission, requiring defendant to re-establish and maintain a railway station in the city of Duluth known as Twentieth Avenue Station, and to operate all of its trains by way of said station. The case was tried before Cant, J., who made findings of fact and as conclusion of law found that relator was entitled to a peremptory writ as prayed. From an order denying a motion for a new trial defendant appealed. Affirmed and remanded with directions.

*C. W. Bunn* and *Emerson Hadley,* for appellant.

*W. B. Douglas,* Attorney General, and *Clapp & Macartney,* for respondent.

LEWIS, J.

Mandamus proceedings brought by the Railroad and Warehouse Commission to compel the Northern Pacific Railway Company to maintain a station, with an agent, at Twentieth avenue, in the city of Duluth, and to run all of its through passenger trains between St. Paul and Duluth by the Twentieth Avenue Station, instead of leaving the main line at Grassy Point, in the City of Duluth, and going over St. Louis Bay to the city of West Superior, and then back to the Union Depot in Duluth by way of Rice's Point.

In order to a comprehensive understanding of the case, it is necessary to state the facts in detail. They mainly appear in the findings of the trial court, and, so far as pertinent, are as follows: The Lake Superior & Mississippi Railroad Company was a corporation incorporated and chartered under the provisions of Sp. Laws 1857, c. 93, which is Sp. Laws 1861, p. 202 (c. 1, § 2). Those acts contain the following provisions:

"To survey, locate, construct, maintain, use and operate, and at pleasure to alter the line thereof, a railroad with one or more tracks or lines of rails, to commence at some convenient point or place within the state of Minnesota at the west end of Lake Superior and running thence by the most feasible route within this state to some point on the Mississippi."

By act of Congress, approved May 5, 1864 (13 St. 64, c. 79), every alternate section of public lands of the United States, not mineral, to the amount of five alternate sections per mile on each side of the railroad on the line thereof within the state of Minnesota, was granted to the state to aid in the construction of a railroad from St. Paul to Lake Superior. The grant was accepted by the state, and conveyed to the Mississippi Company, which company accepted the grant, and constructed and operated the line of road from St. Paul to Duluth, at the head of Lake Superior, wholly within the state of Minnesota. The St. Paul & Duluth Railroad Company was incorporated and organized under the provisions of Laws 1876, p. 47 (c. 30), and pursuant to the provisions of that act the company succeeded to all of the rights, powers, and privileges of the Mississippi Company, and became the owner of the line of railway, together with the land grant, and became subject to all of the duties, requirements, and liabilities of the Mississippi Company to maintain its railroad, as provided in the original charter of that company. From the time of acquiring such road and up to June 16, 1900, the St. Paul & Duluth Company operated the same between St. Paul and Duluth, maintaining a station at Twentieth avenue west, and running all of its passenger trains over the line terminating at the Union Depot in Duluth, and constructed a branch line of railroad from a point on its main line about six miles west of the Union Depot, across St. Louis river, to the city

of Superior, Wisconsin, and ran trains thereon for the purpose of connecting the city of Superior with the trains upon the main line within the state of Minnesota, and at no time ran any of its through trains to the Union Depot in Duluth by way of the branch and the city of Superior.

The appellant, the Northern Pacific Railway Company, is a corporation organized under the laws of the state of Wisconsin, and on June 16, 1900, purchased the charter, franchises, and all of the property of the St. Paul & Duluth Company, thereby succeeding to all of its rights and liabilities. After such purchase the state of Minnesota commenced an action against the appellant company and the St. Paul & Duluth Company in the district court of Ramsey county, for the purpose of setting aside the sale, upon the ground that the purchase and transfer were contrary to the laws of the state of Minnesota, and as a result of such action, while the same was pending, on or about September 12, 1900, the appellant company entered into a contract in writing, reciting the history of the companies, their organization, the purchase, the commencement of the action, and agreed and covenanted that it held the railway so purchased from the St. Paul & Duluth Company subject to all the public obligations in favor of the state, the people of the state, or the Board of Railroad and Warehouse Commission, which would exist with respect to such railways and traffic had such sale not been perfected, and the contract contained the following provision:

"The said Northern Pacific Railway Company further covenants and agrees that it will forever operate and maintain the said line of railway wholly within the state of Minnesota between the cities of St. Paul and Duluth, with a branch to Minneapolis in connection with the terminals hereinafter referred to,  *  *  *  and will forever maintain and operate for the benefit of the people of Minnesota and the Northwest, first-class, complete and adequate terminal tracks, yards and appurtenant facilities in Minnesota on Lake Superior in Duluth and in its vicinity for the transfer from boats, and other connecting carriers, and the receipt and shipment over the former St. Paul & Duluth lines, the Northern Pacific lines, and its connections, of all freight originating at the head of the lake or coming into the state from outside, and the transfer to boats and other connecting carriers and the receipt and ship-

ment of all freight shipped to the head of the lake or via the head of the lake out of the state; that said terminal tracks, yards and facilities so to be maintained shall never be less sufficient or adequate than, the terminals at present operated by the Northern Pacific Railway Company in and about Duluth; and that the people of the state of Minnesota shall always have as favorable rates on incoming and outgoing freight to, from, through or via Duluth as are given by the Northern Pacific Company on similar freight, to, from, through or via Superior, West Superior, or any point on the Northern Pacific lines in Wisconsin. In all questions arising as to the reasonableness of rates over the said railways so heretofore purchased by the Northern Pacific Railway Company from the St. Paul & Duluth Railroad Company, the lines so purchased shall be treated as a distinct and separate entity."

The Twentieth Avenue Station was established by the St. Paul & Duluth Company about thirteen years prior to the purchase of the railroad by the appellant company, and was always maintained as a station with an agent, and a regular freight and passenger business was conducted, and all of the passenger trains, with the exception of one, known as the "Duluth Limited," stopped at the station for the purpose of accommodating passengers.

It was found by the court that during this period a center of business and population grew up around this station, and that for some time prior to September 12, 1900, and at that time, more than one hundred places of business, including stores, wholesale and retail, and factories, were located in the immediate vicinity, and that about eight thousand people existed in the locality adjacent thereto, depending to a large extent for the transportation of business upon the facilities extended at such station; that this station is located about one and three-tenths miles west of the Union Depot, and that part of the city is to some extent isolated from the portion in the vicinity of the Union Depot and the large freight houses of appellant company as now located, and that during all of such time that part of the city contiguous to the Twentieth Avenue Station was to a large extent a separate community.

After the purchase of such railroad appellant maintained the station until October 7, 1900, at which date it ceased to run the passenger trains then operated on the main line over that part of its line, but ever since such date has continued to run its pas-

senger trains operated between the city of Duluth, St. Paul, and Minneapolis, and other stations upon its main line, by leaving the main line at Grassy Point, six miles west of the station, and running thence over the branch line above described to the city of West Superior, thence by way of Rice's Point back to Duluth to the Union Depot, and has only operated one mixed train daily each way between the Union Depot and the village of Fond du Lac, some sixteen miles distant, over that part of the line passing Twentieth avenue. In the month of May, 1901, the Twentieth Avenue Station was abandoned, and at no time since such date has any station or facilities for the accommodation of freight or passengers been established at that point, except that freight in car lots has been received and accepted upon the side tracks in that vicinity; and the court also found that since such purchase appellant company has greatly improved and enlarged its freighthouses situated on and near Fifth avenue west in Duluth, and has greatly increased its terminal facilities in that vicinity, and expended large sums of money in the improvement and extension of its terminal tracks and yards upon Rice's Point in Duluth; but that neither of the large freighthouses and facilities for handling freight nor improvements to the terminal tracks or yards of the railway company upon Rice's Point are of any special benefit to the separate business community tributary to the Twentieth Avenue Station, and, notwithstanding such improvements, the abandonment of that station rendered the terminal facilities of the appellant company in and about Duluth less sufficient and adequate than those operated by that company on September 12, 1900, within the meaning of the contract of that date.

Appellant assigns as error the conclusion of the trial court that the appellant is not operating passenger trains between St. Paul, Minneapolis, and Duluth wholly within the state of Minnesota, nor between the west end of Lake Superior and the Mississippi river in such state, and is thereby violating the obligations imposed by Sp. Laws 1861, c. 1, as well as the provisions of the contract referred to, and that such contract required the construction and operation of such railroad wholly within the state;

89 M.—24

that the court erred in refusing to find to the effect that the terminal tracks, yards, and facilities in the vicinity of Lake Superior in Duluth for the transfer and connection of passenger and freight over such road and the lines of appellant company had been greatly extended, enlarged, and improved since September 12, 1900, and at the time of the commencement of this proceeding were as sufficient and adequate as they were on September 12, 1900, and erred in refusing to receive certain testimony tending to show that such improvements and terminal facilities at Duluth were more adequate for the public necessities than they were at the time such station was closed.

There are two principal questions before the court: (1) Is appellant required to reopen the Twentieth Avenue Station, and maintain an agent there, as formerly? (2) Can appellant be required to run all of its passenger trains between St. Paul and the Union Depot at Duluth by way of the east side of St. Louis Bay, passing by Twentieth Avenue Station?

It is clear that, whatever obligations the St. Paul & Duluth Company were under to maintain the Twentieth Avenue Station, the appellant company has assumed them by virtue of the contract referred to, and is not relieved from the duty, unless it appears that the conditions in reference to terminal facilities and accommodations have in the meantime so changed that it would be an unreasonable burden upon the appellant to maintain the same.

Appellant seeks to justify its course in closing the station upon the ground that it has furnished more adequate facilities at its terminal yards and freighthouses at Fifth avenue and on Rice's Point, so that the patrons of the road formerly doing business at the Twentieth Avenue Station can now readily be accommodated at the general freighthouse and offices of the company, and that the contract wherein appellant agreed that the terminals, etc., should never be less sufficient or adequate than formerly operated by it in Duluth, should not take into account accommodations or facilities existing at the Twentieth Avenue Station, but have reference to accommodations and facilities generally

at the terminals and freighthouses of appellant company at Duluth; and therefore, since it appears that such terminals and means of caring for business have been very largely developed and increased since the contract was made, the contract has been complied with. In this respect we agree with the trial court that the contract was entered into by appellant for the purpose of determining a controversy which was then pending between the state and the company, and it is evident from the nature of the agreement and its recitals that the purpose sought to be attained in that suit by the Railroad and Warehouse Commission was to preserve intact the then existing means and accommodations of doing business with the company. The maintenance of the Twentieth Avenue Station for the accommodaton of the people in that vicinity was reasonably in mind when that contract was executed. The finding of the court that the increase in the general facilities and methods of handling business at the terminals and the freighthouse on Fifth avenue did not inure to the benefit of that portion of the community formerly doing business at the Twentieth Avenue Station is sustained by the evidence. Those general facilities may accommodate the people of Duluth in a general way, and inure to the benefit of all the patrons of the road, including the Twentieth avenue business center; but by comparing the means open to them to transact business with the company at the time when the station was closed in 1900 with the conditions which existed at the time of the trial it is evident that such locality is not so well served as formerly. That community is unable to take advantage of the increase in the general facilities without being put to the inconvenience of delivering and receiving freight at a greater distance by about one-and-a-half miles than formerly, and the special benefit conferred upon them by such improvements is not sufficient to take the place of those special advantages of which they were deprived.

We do not wish to be understood as holding that at all times the peculiar and special privileges enjoyed by a local community will outweigh the general inconvenience and loss to the general public and the railway company incident to maintaining the priv-

ilege. The time may come when the terminals, yards, freight-houses, and connections of the company may be so extended as to practically make it necessary to discontinue the Twentieth Avenue Station. But the evidence offered did not tend to show that such condition existed at the time of the trial.

The finding of the court to the effect that the business community in the vicinity of Twentieth Avenue Station has been seriously affected by the closing of that station is sustained by the evidence, and, since it was contemplated by the contract executed by appellant that it would maintain the station for the accommodation of that community, it follows that the conclusions of the court upon this branch of the case were correct.

2. It is claimed by appellant that, inasmuch as Grassy Point is within the limits of the city of Duluth, and located upon the bay or river, which is to some extent navigable, it is complying with the charter in operating trains between St. Paul and the point where the branch line starts for Superior. The requirement of the original charter is that the road shall commence at some convenient point or place within the state of Minnesota at the west end of Lake Superior. We hold that the St. Paul & Duluth Railroad Company construed the charter in this respect when it constructed the road and located its terminus at the point on Lake Superior now known as the Union Depot. Having located the station and terminal facilities in that vicinity on the Bay of Duluth, the main harbor of Duluth, it will not at this time be permitted to change its terminus, and thus deprive the people in Duluth and the public of the benefits which have accrued during all these years. If appellant is now permitted to call Grassy Point its northern terminus, simply because technically that location is within the meaning of the charter—that is, a point upon a navigable portion of a bay of Lake Superior in the city of Duluth—then there can be no reason why the road should not be permitted to abolish its terminals and station at the Union Depot entirely, and not run any of its trains beyond Grassy Point. For like reason, in the course of time it would be permitted to move its base of operations further west, from time to time, to the city limits.

Railroad traffic is naturally divided into two classes—passenger and freight; but the method of running freight trains is not involved in the present controversy, no change having been made in that respect since appellant purchased the road. The decision of the trial court is apparently based upon a strict construction of the charter, and it was held that by its terms appellant is required to operate all its passenger trains, without exception, over the Twentieth avenue line. On the other hand, it is submitted by appellant that the true and only feasible construction arises from a consideration of the general purposes to be accomplished by the company, rather than from the technical meaning of the language of the charter; that at most all that could be claimed by the center of population and business at the station in question is that a reasonable passenger service be maintained; that the running of a mixed passenger and freight train each way daily from the Union Depot to Fond du Lac constitutes reasonable service; but that, in any event, a new trial must be granted, because that question was not determined by the trial court.

Railroads are constructed and operated for the dual purpose of providing a reasonably profitable return on the capital invested, and also, so far as practicable and reasonable, to accommodate the public demands for transportation facilities. In this case such demand is not necessarily limited to the citizens of Duluth, St. Louis county, or the state of Minnesota. A large percentage of the passenger business conducted by appellant is between St. Paul, Minneapolis, and West Superior, and persons having occasion to pass between those points have an interest, as part of the traveling public, which may be taken into account. If that portion of the public traveling between the Twin Cities and Duluth proper are accommodated in an effective manner, it is immaterial whether they are carried over the Twentieth avenue line or by way of West Superior. And, further, if the public interests generally in Duluth and St. Louis county are furnished ample and efficient means of transportation, is there any reason why similar interests in West Superior should not be incidentally accommodated at the same time and by the same means? And, if the busi-

ness interests and population centered about the Twentieth Avenue Station have at their command a passenger service reasonably adequate under all the circumstances, considering other means of transportation, why should more be demanded, especially if by acquiescence therein other interests, public and private, are made to suffer?

In our judgment, what constitutes reasonable passenger service at the Twentieth Avenue Station is a question of fact, and the charter does not necessarily require all passenger trains to run that way. The charter contemplates a road to be built and operated for both freight and passenger business within the state of Minnesota. The evident object is to insure the continual enjoyment of the privileges established from time to time for the Minnesota public, and to place the control of the road under the dominion of Minnesota law. The state reserved the right to control and supervise the arrangement and distribution of business, and determine for itself when the service was adequate at the terminal points and along the line of road within the state. If appellant were permitted to transfer the main part of its business, passenger or freight, from the main line within the state, as provided by the charter, to another line through another state, serious questions would arise as to whether the road had not passed from the state to federal jurisdiction. What changes may be made within the principle here discussed is not now before us. It is a question for the commission to decide, and we assume that the matter will be given a full and fair consideration when properly brought before that body.

It is clear that appellant is not now using the original line between West Duluth and the Union Depot as its main line for passenger service. By the present arrangement that part of the system has been practically abandoned, with hardly a respectable effort to keep up appearances by running a mixed train to and from Fond du Lac. It appears from the record that the change was made and insisted upon as a strict matter of right, and without seeking a construction of the charter from the commission or the court, and without application to the commission for some reasonable

adjustment. The conclusion of the court below was apparently based upon a strict construction of the charter language. We accept the decision as correct, although the proper reason was not assigned. The St. Paul & Duluth Railroad Company had always operated its trains on the Minnesota side, and had made a practical constructon of the charter, and it must be assumed that such arrangement was with the approval of the commission. If, then, under such conditions, appellant arbitrarily changed all of its trains, as above stated, and abandoned the main line within the state, without recognizing the jurisdiction of the commission, without applying for a relaxation of the rule as then in force, and without any hearing upon the subject, it was proper that the writ issue to compel a reinstatement of the former method of running the trains. By virtue of the charter stipulations and under the evidence the railway must be maintained and operated from Duluth to the Mississippi river wholly within this state, unless the state shall otherwise consent by its railway commission. Appellant is in no position to complain of the trial court's decision as being arbitrary, and not based upon a consideration of the reasonableness of the services rendered.

The order of the trial court is affirmed, with directions to the trial court to grant a reasonable stay before judgment is entered, within which time appellant may, if so advised, make application to the Board of Railroad and Warehouse Commission for a modification of the plan of running trains originally in force by the St. Paul & Duluth Railroad Company.

START, C. J.

I assent to the conclusion that the order of the trial court must be affirmed. I place my concurrence upon the broad ground that the defendant is legally bound to operate the line of railway which it acquired from the St. Paul & Duluth Railroad Company, and run the whole road, as one continuous line, wholly within the state of Minnesota, unless the state shall otherwise agree. I am of the opinion that the question of what is a reasonable operation of the line is not the test of the defendant's duty to operate the line wholly within this state. The defendant is subject to the same

burdens and obligations as to the railway line in question as its grantor was. Now, the state and the original company agreed as to what would be a reasonable operation of the road, and what the interests of the state demanded, when the charter was granted and accepted. The state, by the charter, granted to the company franchises of great value, and in consideration thereof the company agreed to survey, locate, maintain, use, and operate a railway line within the state of Minnesota from a point within the state at the west end of Lake Superior to some point within the state on the Mississippi. If this be a fair construction of the charter, and it seems to be, then the defendant must operate the St. Paul & Duluth Railway line as one continuous line wholly within this state, until it first obtains permission from the state to do otherwise.

On June 4, 1903, the following opinion was filed:

PER CURIAM.

The respondent having upon notice to the appellant moved the court for a modification of its decision herein, it is ordered that the order of this court remanding the case be modified so as to read as follows: The order of the trial court is affirmed, and the case is remanded with directions to the trial court to grant, upon the appellant's application and a showing that it has complied with so much of the order appealed from as relates to the reopening of the Twentieth Avenue Station, a reasonable stay before judgment is entered, within which appellant may, if so advised, make application to the Railroad and Warehouse Commission for a modification of the plan of running passenger trains originally in force by the St. Paul & Duluth Railroad Company.