WILLIAM HAMEL v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

February 23, 1906.

Nos. 14,621—(209).

**Deed—Condition Subsequent.**

The rule that conditions subsequent embodied in a conveyance of real property will be strictly construed against the grantor applies more particularly in interpreting the contract, and in ascertaining whether the proper construction of the language thereof creates a condition subsequent or a mere covenant.

**Intent of Parties.**

When the intent of the parties is clear, their rights and liabilities in respect to such conditions are determined and enforced precisely as in other contracts.

[1] Reported in 107 N. W. 139.

**Condition that Premises be Used for Station.**

Plaintiff conveyed a strip of land for right of way purposes over and across his farm, and two strips adjoining thereto, one on the north and one on the south, for yard and station purposes, to the Minneapolis & Pacific Railway Company, to all the rights and liabilities of which defendant herein has succeeded, subject to the following condition, which was the sole consideration for the conveyance: "If said second and third strips shall not be used for station purposes for the period of one year at any one time, the same and said first strip shall revert to and revert in the party of the first part." *Held:*

(a) That the condition was in law a condition subsequent, and that a failure on the part of the railroad company to comply therewith operated as a forfeiture of the estate conveyed.

(b) That the words "station purposes," as used in the contract, were intended by the parties to mean and refer to a regularly operated railroad station, at which business might be conducted with the railroad company as at its other stations; and

(c) That, as defendant has failed to comply with the conditions by maintaining such a station, title to the property in question reverted to plaintiff.

**Construction by Conduct.**

The rule that a construction of a contract by the acts and conduct of the parties subsequent to its execution is potent evidence of their intent and meaning applied.

Action of ejectment in the district court for Hennepin county to recover possession of land occupied by the defendant for right of way and station grounds. Plaintiff's right to recover was based upon an alleged breach of a condition subsequent in the deed of conveyance of the premises under which defendant claimed title. The case was tried before Brooks, J., who found in favor of plaintiff. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*Alfred H. Bright,* for appellant.

*Frank D. Larrabee,* for respondent.

BROWN, J.

The facts in this case are as follows: In September, 1886, plaintiff was the owner of a tract of land in Hennepin county, over which the proposed line of the Minneapolis & Pacific Railway Company extended, and at that time he executed a conveyance of three distinct parcels

of the same to the railway company for right of way and station pur-
poses. The first parcel was a strip of one hundred feet for right of way
purposes, extending across the tract; the second, a strip adjoining the
right of way on the south, 75 x 1,800 feet; and the third, a strip on the
north of the right of way, 25 x 1,800 feet—the two latter for yard and
station purposes. The sole consideration for the conveyance was the
following condition incorporated therein:

> If said second and third strips shall not be used for station
> purposes for the period of one year at any one time, the same
> and said first strip shall revert to and revert in the party of the
> first part.

Subsequent to the execution of the deed the railroad company,
grantee therein, took possession of the land so conveyed, constructed
its railroad, and established a station thereon, which was named Hamel.
An agent was installed and placed in charge of the station, which was
equipped with all necessary facilities for conducting and transacting the
business of the company at that point, and from which freight was
thereafter received and shipped, tickets sold to passengers, telegraph of-
fice opened, and the business and affairs of the company conducted in
all respects as at its other stations. The grantee and its successor, de-
fendant herein, which has succeeded to all the rights and liabilities of the
former company, thereafter continued to maintain and operate the sta-
tion in compliance with the conditions of the deed and for the regular
transaction of business with the public up to December, 1903, a period
of seventeen years, when the agent was withdrawn and business prac-
tically suspended at that point. Since that time no ticket, telegraph, or
freight office has been maintained; no agent to receive or deliver freight,
sell tickets, or furnish information to the public as to transportation
rates. Persons desiring empty cars at the station have been compelled
to apply therefor to the agent at another station, and to notify him
when such cars were loaded and ready for shipment. Goods consigned
to this station, but not prepaid, are delivered at Loretto, a station six
miles away. Prepaid freight has been delivered at Hamel, but the
owners thereof get no information of its arrival and are required to as-
certain the fact as best they can. Trains stop there to receive and let
off passengers, and the station building is kept open for the accommo-

dation of the traveling public, though no business of any kind is trans-acted with the railroad company.

This condition has existed for more than a year, and on the theory that, for the failure of the company to comply with the conditions of the deed by maintaining a business station, the title to the land conveyed has reverted to the plaintiff, this action was brought to recover possession of the land, and for damages alleged to have resulted from the failure of defendant to perform the contract. The facts are fully stated in the complaint, to which defendant answered, putting in issue the alleged breach of conditions of the contract, alleging that the same had been substantially performed. The rights of the respective parties in and to the land were the only questions litigated in the court below; the matter of damages claimed by plaintiff being deferred by consent until the legal rights of the parties to the land were settled and determined. Plain-tiff had judgment, and defendant appealed from an order denying a new trial.

The sole question presented on this appeal is the proper construction of the conditions of the deed above quoted, under which defendant ac-quired title to the land. In other words, has defendant failed, within the meaning and intent of the conditions, to keep and perform the same? The condition in substance is that if the railroad company shall fail, for the period of one year at any one time, to maintain a station upon the land conveyed, the title thereto shall revert to plaintiff, the grantor. It is a condition subsequent, and operates upon failure of per-formance by the grantee as a forfeiture of the title conveyed, and though such conditions are not favored in law, and are construed strictly, they are upheld when unequivocally expressed and not im-possible of performance. 13 Cyc. 686. The general rule that such conditions are construed strictly against the grantor does not mean that force and effect will not be given the contract. The rule applies more particularly in ascertaining the purpose and intent of the parties, and whether the language employed by them, construed in con-nection with the whole instrument, amounts to a condition subsequent or a mere covenant. With the intent of the parties clear and beyond doubt, their rights and liabilities are determined precisely as in other contracts.

97 M.—22

The question in this case is narrowed down to what the parties intended by the word "station" as used in the conditions of the deed. The contract provides that, if the railroad company fails to maintain a "station" upon the land conveyed, title thereto shall revert to plaintiff. We find no cases which may be said to be directly in point, though a number are cited in the briefs which bear more or less upon the question. In ascertaining what was intended by the parties, we apply the general rule that their situation and the circumstances existing at the time of the contract may be taken into consideration. 17 Am. & Eng. Enc. (2d Ed.) 21. It appears from the record that plaintiff owned a tract of about two hundred acres of land, and it fairly appears that he donated the land in question to the railroad company for the right of way and depot purposes in consideration of the establishment by it of a station at that point, which would naturally tend to enhance the value of his property by the building up of a village thereon. In making use of this particular language he undoubtedly had in mind a railroad station for all practical purposes, at which the business of the company would be transacted in the usual manner, where tickets might be bought, telegraph messages received and sent, and freight received and shipped; a station at which an agent would be kept for the purpose of transacting all business of the company. Clearly such was his intent, and that the railroad company so understood is shown by its subsequent conduct.

The rule is thoroughly settled that, where there is doubt or ambiguity in the terms of a contract, the construction thereof by the acts and conduct of the parties will be strong evidence of their intent and meaning in entering into it. 17 Am. & Eng. Enc. (2d Ed.) 23; St. Paul & D. R. Co. v. Blackmar, 44 Minn. 514, 47 N. W. 172; First Nat. Bank v. Jagger, 41 Minn. 308, 43 N. W. 70; Hill v. Duluth City, 57 Minn. 231, 58 N. W. 992; Western Union Tel. Co. v. American Bell Tel. Co., 125 Fed. 342, 60 C. C. A. 220; 3 Current Law, 830.

From the fact that immediately after the execution of the deed in question the railroad company constructed a depot on the grounds, placed side tracks thereon, and installed an agent and a telegraph office, and for seventeen years thereafter maintained and operated the same precisely as all other stations on its line were operated, gives force and effect to the contention of plaintiff that the company understood that

by the conditions of the deed it was required to operate this particular station as a regular station.   It is obvious that by this transaction the parties had not in mind the erection of a station building only, or the placing of side tracks on the land conveyed, which would be of very little practical use to the citizens of the place or to plaintiff, while, on the contrary, the station and side tracks, in charge of an agent of the company authorized to carry on its business generally, would be serviceable and beneficial to them.   We have no difficulty in reaching the conclusion, aided by the rules of law above adverted to, that such a station was the one contemplated by the parties when this contract was made. Though a distinction may be pointed out in some of the cases between a "station" and a "regular station," it is clear that in this instance the parties had in mind and intended to express, by the language of this deed, a regular station for the transaction of the company's ordinary business.

There was, at the time of this transaction, no technical legal meaning to the word "station," and no recognized distinction in law between a "station" and a "regular station" (Falk v. New York, 56 N. J. L. 380, 29 Atl. 157) ; and the fact that the legislature may have since that time made and recognized a distinction can have no effect upon rights which became vested long prior thereto.   Subsequent to the time the defendant withdrew its agent from the station and ceased to transact any further business with the public at that point, a petition was presented to the state railroad and warehouse commission for an order requiring the company to reinstate an agent; but the petition was denied by the commission upon the ground that the volume of business at that place did not warrant or justify the company in maintaining a regular station. This fact can have no effect upon the controversy between these parties. The rights and liabilities of each must depend upon the contract made between them, as evidenced by the deed and the conditions therein, and that must be construed, as we have construed it, in the light of the circumstances surrounding the parties at the time it was entered into. What has transpired since, either before the state railroad and warehouse commission, or by legislative enactment, cannot in any way affect the right of plaintiff to insist upon a compliance with the conditions of the deed.

Our conclusions are that the findings of the learned trial court are sustained by the evidence, and the order denying a new trial is affirmed.

Order affirmed.