# IGNACY ZAKRZEWSKI v. GREAT NORTHERN RAILWAY COMPANY.[1]

March 6, 1914.

Nos. 18,477—(278).

**Railway — stock pens.**

1. Where reasonably necessary a railway company must keep and maintain stock pens in such condition and equipped with such facilities that animals confined therein awaiting shipment may receive proper care and attention during a reasonable time prior to loading.

[1] Reported in 145 N. W. 801.

---

Note.—The question of the duties of carriers of live stock as to pens or yards at stations is discussed in a note in 44 L.R.A. 289. And as to the duty of a carrier as to condition of stock pens, see note in 10 L.R.A.(N.S.) 571.

**Same — duty to furnish feed and water.**

2. In the absence of statutory provisions a railway company is not required to furnish feed or water to live stock in its pens awaiting shipment, unless the company has accepted the care and control thereof.

Action in the municipal court of Minneapolis to recover $159.69 for injury to plaintiff's live stock. The answer was a general denial. The case was tried before Montgomery, J., who at the close of plaintiff's testimony denied defendant's motion for a dismissal of the action and, at the close of all the evidence, its motion for a directed verdict in its favor, and a jury which returned a verdict for $150 in favor of plaintiff. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*M. L. Countryman* and *Cobb, Wheelwright & Dille,* for appellant. *Stiles & Devaney,* for respondent.

HOLT, J.

Defendant's railway passes through the village of Stephen, in Marshall county, this state. On Saturday of each week defendant has been accustomed to accept at that place live stock in carload lots for shipment to the markets of South St. Paul and Chicago. For handling such shipments it there maintains two stock pens and a loading-chute. The shippers of stock from Stephen buy the same from farmers living within a radius of 10 or more miles of the village. The sellers generally deliver the same to the shippers, or buyers, at Stephen in the afternoon preceding the day of shipment. The shippers at once upon receipt of the animals place them in defendant's pens and the next day, being Saturday, they are loaded onto the cars and taken out by the stock train scheduled to arrive at noon. One of the two pens contained a rack for feeding hay, the other a manger, and in the alley between the pens with gates opening into each was a trough designed for watering.

In the afternoon on October 4, 1912, plaintiff placed in these pens at Stephen for shipment the next day a carload of cattle, sheep, and hogs bought of surrounding farmers and then delivered to him. He

had previously ordered the car and had been notified that it would be ready for loading on Saturday the fifth of October. The animals were shipped to South St. Paul and there sold. Plaintiff sues for damages to the shipment, claiming that defendant kept its said pens in such negligent, improper and filthy condition that the animals could not be fed or watered, thereby causing an abnormal loss in weight, and that it so affected their appearance that the grade and market price were reduced. Plaintiff recovered and defendant appeals from the order denying its motion in the alternative for judgment in its favor or a new trial.

Defendant does not here contend for judgment notwithstanding the verdict, but it insists that its responsibility as a common carrier did not arise until the stock was loaded on the cars and therefore the court's instruction which stated that it was required to furnish facilities for properly caring for the stock for a reasonable time prior to shipment, including means to water the same, was incorrect. Plaintiff on the other hand claims that as soon as stock is turned into yards or pens of defendant for immediate shipment its responsibility as common carrier attaches. If that be incorrect, he nevertheless contends that defendant should here be held liable for failure to provide proper facilities for caring for the stock including water while awaiting loading.

A common carrier is required to furnish reasonable facilities for the proper conduct of its business, such as properly lighted and heated depots for its passengers, warehouses for the safe-keeping of inanimate freight, and, where reasonably necessary, pens, yards and loading-chutes for the handling of stock shipments. It is plain that no hard or fast rule can be formulated as to the character of these, or that all should be furnished at every railway stopping place. Nor is it necessary to decide whether Stephen is entitled to have defendant there provide stock pens. Defendant has for years recognized that facilities for shipping stock in carload lots is reasonably required at that point, for it has undertaken to furnish the same. The evidence also tends to show the manner in which shippers availed themselves of these facilities in view of the practice of defendant to accept stock shipments on a day certain each week. There ought

to be no doubt upon the proposition that, at those shipping points of a common carrier where stock pens or yards are reasonably necessary, the duty rests upon the carrier to furnish the same in such condition and with such facilities for handling and caring for stock that the shipper can, with a reasonable degree of safety and convenience, assemble and attend to the wants of the animals so that when loaded they are in a fit condition to stand the hardships of the journey. The time during which the shipper would be entitled to the use of such pens prior to loading should be measured by what is reasonable under the circumstances.

The evidence of plaintiff tended to show that the pens were in such condition that the animals literally wallowed in mud and filth, that the manger and watering trough were filled therewith, and that the rack was so broken that when an attempt was made to place hay therein it fell out and was immediately trampled down in the mud and lost. Animals should not be compelled to stand or lie in mud. Under our present laws the dumb brutes within man's power are entitled to humane treatment. This requires the place of confinement to be decently clean and dry, and food and water at the proper time. Where cattle, sheep or hogs, by the carload, are received at shipping points to such an extent that pens are reasonably necessary for their reception, it would seem to be out of the question to take the animals out for feed and water either singly or collectively. Hence it should be readily conceded that proper racks, mangers and troughs for feeding and watering are necessary equipments in stock pens.

In the main the trial court's charge correctly defined the duty of defendant, in view of the situation at Stephen, with one exception. The jury were told: "It is also the duty of such carrier to furnish and supply to shippers who may have assembled and placed their live stock in such yard or pens, and tendered or offered such stock to the carrier at such point for shipment, reasonably fit and suitable facilities for securing and supplying water, such as a well, cistern, hydrant, or pump, or the like, for the use of such live stock while confined in such yards or pens, awaiting loading and shipment, during a reasonable time" prior thereto. This placed a more onerous burden on defendant than the evidence and the law warranted.

Plaintiff does not claim that the carrier of stock is obliged to furnish the same with feed before being loaded for shipment, but insists it must provide facility for watering in the pens. Of course there is a measure of plausibility in a contention that in this state water is held as free as the air we breathe and, therefore, the duty to furnish it for stock pens is not to be viewed the same as if feed was required. But there is no real ground for distinction when it comes down to a matter of right. At some shipping points and at certain seasons the expense connected with furnishing water in stock pens may well be a heavy burden. Moreover it appears that plaintiff cannot attribute loss or damage to the absence of a water supply in the pens. He well knew that these were never supplied with water, and that the shipper invariably had procured water for the stock awaiting shipment at Stephen. And in the absence of a positive statutory duty imposed on defendant, plaintiff ought not to be permitted now to claim any damage from the fact that there was no pump in the cattle pens. As somewhat indicative of a general understanding that a railroad is not required to have all shipping points equipped with facilities for providing stock with water before loading, is the fact that not until the last legislature was any law in regard thereto enacted. Section 4223, G. S. 1913. That law itself recognizes that such facility is not an indispensable requirement at every station where stock may be received for shipment, for water need be supplied only when ordered by the board of railroad and warehouse commissioners. We cannot hold that a common carrier must furnish water free to stock while in its stock pens awaiting shipment.

Nor do we concur in the contention of plaintiff that the responsibility of a common carrier attaches as such the moment stock is placed in its stock pens for shipment without regard to attending circumstances. The conduct of both shipper and carrier may be such that the liability as carrier attaches with the yarding of the shipment. But there is no evidence warranting such a conclusion in the instant case. The control and management of the animals appears to have been entirely with plaintiff until loading began. He could have withheld any or all from shipment. The recovery must therefore depend, so far as the evidence in this record tends to show,

125 M.—9.

upon defendant's failure to furnish a proper yard, with facilities wherein plaintiff could properly care for his stock while awaiting transportation, and not upon defendant being an insurer of the safety and proper care of the shipment under its common-law liability as a common carrier.

We have been cited to no authority supporting, in the broadest sense, the contentions of either party. Nor have we found any similar case to the one here presented upon the facts. The following may have some bearing on the propositions involved: Texas & P. Ry. Co. v. Moore, (Tex. Civ. App.) 119 S. W. 697; Missouri, K. & T. Ry. Co. v. Byrne, 100 Fed. 359, 40 C. C. A. 402; Covington Stock Yards Co. v. Keith, 139 U. S. 128, 11 Sup. Ct. 469, 35 L. ed. 73; Chicago, B. & Q. Ry. Co. v. Powers, 73 Neb. 816, 103 N. W. 678; 1 Hutchinson, Carriers (3d Ed.) § 114.

For the error alluded to in the charge the order, in so far as it denies a new trial, is reversed.