## JAMES REID v. MINNEAPOLIS & RAINY RIVER RAILWAY COMPANY.[1]

December 27, 1929.

No. 27,616.

[1]Reported in 228 N. W. 548.

*Denegre, McDermott, Stearns, Stone & Mackey,* for appellant.
*Alfred L. Thwing,* for respondent.

OLSEN, C.

Appeal by plaintiff from an order denying his motion for a new trial.

The action is one to enjoin the defendant from using a so-called spur track for purposes other than to serve plaintiff in his shipping business or such as are consented to by him; also to recover damages for alleged unauthorized use of said track by defendant.

Defendant owns and operates a railroad in this state, commencing at Deer River and running thence northerly to its termination at the Big Fork river in the northeast quarter of the southwest quarter of section 36, township 63, range 26, at what is known as the station of Craig. This 40-acre tract was originally state school land. The main line track of the railroad was built about 1907. A right of way for the line 100 feet wide was purchased by defendant from the state and a right of way deed given therefor.

In 1913 plaintiff commenced logging operations on the Big Fork river. He applied to the defendant for the construction of a spur track or extension of its railway track running from a point near the termination of the main line in a northeasterly direction along the southerly bank of the river for a distance of about 1,600 feet,

for the purpose of facilitating the loading and shipment of logs and timber products. This track was then constructed. It ran over comparatively level ground. By agreement of the parties, plaintiff did the grading and furnished the original ties. Defendant furnished and laid the rails and has since maintained and used the track. Ties originally placed have since decayed and been replaced by defendant. Later the track was extended a short distance beyond the 40-acre tract in question for the use of another shipper, and also for use by plaintiff. Plaintiff did not contribute to this extension. By reason of the death of the officers of defendant who made the original agreement with plaintiff, the exact terms or extent thereof could not be shown. It is not shown that there was any agreement as to the exact use or ownership of the track. The land remained state school land at the time this track was constructed.

In 1915 the defendant made application to the governor and state auditor for additional right of way over this 40 and other land for the purpose of meeting public demand for additional and convenient service for loading and shipping timber products at the station of Craig. The application included a plat showing the lines or tracks for which right of way was asked, including the spur track here in question. The application was approved and granted by the governor and state auditor. The acreage required figured up at 14.93 acres. The land was duly appraised, and the defendant paid to the state the appraised value therefor, $74.65. Of this acreage 5.92 acres were in the 40 in question. The application and plat are in evidence. The governor thereupon on September 18, 1915, executed and delivered an additional right of way deed to the defendant upon such application. By error on the part of the person who drew this deed it failed to describe the 40-acre tract here in question or to refer to the plat in the application for a description of the right of way granted. The deed, in its defective condition, was recorded in the office of the register of deeds of the county. The first right of way deed had conveyed to defendant right of way amounting to 2.23 acres in this 40. This with the 5.92 acres supposed to be

conveyed by the second deed amounted to 8.15 acres granted for right of way in this 40 and left 31.85 acres undisposed of. It may also be noted that the recorded copy of the second right of way deed in the state auditor's office has the correct description of the northeast quarter of the southwest quarter of this section 36 contained therein by an interlineation, that a blue print in that office shows the right of way for the spur track, and that other records in said office show that railroad right of way to the extent of 8.15 acres had been granted out of this 40.

In March, 1916, this 40-acre tract, less railroad right of way, and containing 31.85 acres more or less, was put up for sale. On March 13 plaintiff purchased it from the state for $10 an acre, amounting to $318.50. On November 15, 1923, he received a patent for the land so purchased. In both the sale certificate and the patent the land is described as the northeast quarter of the southwest quarter of said section 36, less railroad right of way, containing 31.85 acres more or less.

Under this sale and patent plaintiff claims to be the owner of the land upon which the spur track in question is located, and that the defendant has no right to use the same except for plaintiff's business or for such other uses as he may give consent to.

The court found in effect that defendant was at least the equitable owner of the right of way and that plaintiff was not entitled to any relief or recovery.

Plaintiff presents two main questions: First, he contends that this second right of way deed to defendant was unauthorized and void because the governor and state auditor, under the statutes hereinafter referred to, had no authority to grant a right of way for a spur track or any other track except a main track and side tracks parallel thereto at stations; second, that even if defendant had obtained equitable rights the plaintiff was an innocent purchaser for value, without notice of such rights, and had obtained legal title to the strip in question.

The original act in reference to right of way over state lands appears to be L. 1878, p. 121, c. 73. That act grants to railroad

companies the right to construct railroad lines over state lands and to purchase as right of way therefor a strip 50 feet wide on each side of the center line of the main track, except that where necessary to protect its track from snow an additional width of 100 feet may be acquired. This became G. S. 1878, c. 34, §§ 43, 44 and 45. The act was amended by L. 1879, p. 51, c. 45. The title of this law states that it is to amend "Chaper 73, General Laws of 1878 * * * so as to include depot grounds." Section 1 of the act provides that a right of way and a quantity of land not exceeding 20 acres for depot and station grounds and water stations may be granted. It is significant that § 2 of the act is practically a re-enactment of § 2 of the act of 1878, and provides that the right of way may be 50 feet in width on each side of the center line of the main track, except that an additional width of 150 feet may be granted where necessary to protect the tracks from snow. It is clear from §§ 1 and 3 of the act, read in connection with § 2, that the limitation as to width of the right of way applies only to main line tracks and has no application to ground required for depots, station grounds or water stations, provided for in §§ 1 and 3.

By L. 1885, p. 49, c. 42, G. S. 1878, c. 34, § 43, was amended by including therein the right of way over university lands, which was not mentioned in the 1878 law. It also purports to legalize deeds for the use of rights of way over university lands theretofore given by the state. It does not refer to the 1879 act and does not repeal anything. The 1885 act clearly had no other purpose than to extend to university lands the provisions for rights of way over state lands and to legalize deeds theretofore given. It does not attempt any change of G. S. 1878, c. 34, § 45, as amended by L. 1879, p. 51, c. 45, providing for the acquisition of grounds for depots, station grounds and water stations, and left unchanged § 44 of that chapter, as amended by L. 1879, p. 51, c. 45, and limiting only the width of right of way for main lines.

G. S. 1894 made no change except to substitute L. 1885, p. 49, c. 42, in place of G. S. 1878, c. 34, § 43

R. L. 1905 combined G. S. 1894, §§ 2670, 2671, 2672 and 2675 into two sections, numbered 2891 and 2892. Section 2891 grants right

of way for main tracks over state lands, limited as to width the same as by the 1879 law, and the right to acquire additional ground for depot grounds and stations. This replaces, in the first section, the provision of the 1879 law for acquiring grounds for depots, station grounds and water stations, no doubt considered to be included in the words "for depot grounds and stations." It leaves out the 20-acre limitation in the 1879 act. It leaves unchanged the meaning of the law that the limitation as to width of right of way applies only to main line tracks and does not apply to yard switch tracks or spurs at a station and a part of the station facilities for there loading and unloading freight. Section 2892 also clearly bears this out. It provides for application by the railroad company for right of way over state lands "or additional grounds thereon." It requires the application by plat to show the right of way asked for, and additional grounds for "depots, station grounds, and water stations," and provides for the giving of deed for the use of such right of way and the use of such additional grounds.

The law was again amended by L. 1909, p. 617, c. 494. Section 2891 was amended so as to apply only to the main line track and provided for a right of way 100 feet wide, with an additional width of up to 100 feet more where found necessary for the construction or operation of the railroad, and additional right of way along main line track up to a total width of 300 feet when necessary for station purposes. Section 2892 was amended to read as follows:

"Whenever any railroad company desiring a right of way over any such state lands or additional grounds thereon, shall furnish to the governor a plat showing the line of its road, right of way, or additional grounds, necessary for the construction or operation of any such railroad or necessary for station purposes, * * * the governor shall execute and deliver to such railroad company an instrument in writing conveying the use of such rights of way, and the use of such lands, so long as the same shall be occupied for railroad purposes."

It is a significant fact that every change made in the law has been for the purpose of extending rather than limiting the right of rail-

road companies to acquire ground for right of way and station purposes. The state itself appraises the land and receives the full appraised value. The only difference between the ordinary sale of state lands and a sale for right of way is that in the latter case there cannot very well be competitive bids.

The only question that might be urged here is whether or not this short spur track was part of the station grounds or used for station purposes. The evidence on that question we think is conclusive that this short spur track was part of defendant's station grounds and used solely to facilitate the loading and handling of freight at this station and to aid in defendant's operation of its railroad at that station; that it was necessary for such purposes. Hall v. C. B. & N. R. Co. 46 Minn. 439, 49 N. W. 239; Wilmot v. Oregon R. Co. 48 Or. 494, 87 P. 528, 7 L.R.A.(N.S.) 202, 120 A. S. R. 840, 11 Ann. Cas. 18; Grosse v. C. & N. W. Ry. Co. 91 Wis. 482, 65 N. W. 185; 3 Wd. & Phr. (1 ser.) 2005, 2006.

The statute provides that title to such lands shall not pass to the railroad company until the governor shall have delivered to it a deed therefor. There is no other limitation. That limitation does not deprive the defendant of such equitable right or title as it may have as against this plaintiff. The court did not err in holding and concluding that the state officers had authority to sell and grant right of way for this stub track to the defendant, nor in holding that by purchasing and paying for the right of way and taking possession thereof the defendant had acquired equitable right and title thereto.

■ The evidence is not such as to require the court to find that plaintiff was a purchaser for value, without notice of defendant's rights to the strip of land upon which the spur track is located. Defendant had its railroad track located on the strip and was maintaining and using it for railroad purposes. Plaintiff had examined the right of way deeds given to defendant in 1907 and 1915. The 1915 deed purported to cover 14.93 acres. It failed to describe the line or lines of right of way. It referred to main track as now located. The prior deed on record already granted right of way for the main line track. The 1915 deed purported to convey right of

way on several 40-acre tracts which did not come up to defendant's main line. The description suggested inquiry as to what was intended to be conveyed. Plaintiff purchased and paid for 31.85 acres, being the acreage figured less railroad right of way. This left 8.15 acres unaccounted for or reserved for railroad right of way; 2.23 acres were accounted for by the right of way deed for the main line; 5.92 acres were not accounted for. There was on the ground this spur track, being maintained and used by defendant. The inference would reasonably be that it was part of the right of way excepted. Plaintiff's certificate and patent conveyed the 40-acre tract to him, less railroad right of way, and containing 31.85 acres more or less, but he had these physical and related facts before him.

■ We find no error in the refusal of the court to submit to the jury questions other than the amount of damages, if plaintiff was entitled to recover. The action for an injunction was for the court. In that action all questions as to the rights and title of the parties in and to the use of the strip of land in question were involved. The court in its discretion might have submitted other or all issues to the jury. It did not abuse its discretion in refusing so to do.

Other assignments of error, if not covered by what has been said, have not been argued. The questions we have considered are decisive of the case in any event.

Order affirmed.

STONE, J. took no part.