## MINNESOTA TRANSFER RAILWAY COMPANY v. RAILROAD AND WAREHOUSE COMMISSION.[1]

July 2, 1937.

No. 31,315.

*J. P. Plunkett,* for appellant.

*William S. Ervin,* Attorney General, *Harry W. Oehler,* Assistant Attorney General, for respondent.

*Elmquist, Felhaber & Elmquist,* for Midway Club of St. Paul.

GALLAGHER, CHIEF JUSTICE.

Appeal from an order of the district court affirming an order of the railroad and warehouse commission requiring the Minnesota Transfer railway to continue to operate and maintain two freight houses known as the East Hennepin avenue station of the Minnesota Transfer railway and the Charles street station of the Minnesota Transfer railway.

[1]Reported in 274 N. W. 408.

The Minnesota Transfer railway is located in the northerly parts of Minneapolis and St. Paul in industrial districts of those cities. Its business does not embrace the carriage of passengers or of freight between stations but is limited to the receipt and delivery of freight to and between nine interstate linehaul railroads which are its proprietors. Toward the performance of its function as a terminal railroad it maintains a stockyard and other facilities for the servicing of shipments.

Minnesota Transfer station, as distinguished from Minnesota Transfer railway, is listed as a station of origination and destination of carload freight shipments on the tariffs of the proprietary companies. Shippers and consignees of this kind of freight deliver such shipments to and receive them from freight cars on private spur tracks or on public team tracks located at numerous places throughout the entire area in which Minnesota Transfer railway has its lines.

For more than 30 years Minnesota Transfer has also been listed on railroad tariffs as a station for the shipment and consignment of less than carload (hereafter referred to as LCL) freight. Since LCL freight is carried in the district cars of the proprietary companies, receipt or delivery of this class of freight cannot conveniently be made to or from the freight car. This kind of freight must be handled through freight houses. Although the Charles street freight house in St. Paul and the East Hennepin avenue freight house in Minneapolis are not listed on any tariff as stations, all LCL freight consigned to Minnesota Transfer station is laid down at one or the other of these freight houses, as elected by the consignee; and all LCL shipments billed as originating at Minnesota Transfer station are received by the railway at one or the other of these places. The Minnesota Transfer railway is without other facilities for the receipt or delivery of LCL freight. The freight agent in whose name bills of lading of LCL freight are made does not have his office at either freight house but at the general offices of the Minnesota Transfer railway, a considerable distance from both freight houses. He is the joint agent of the Minnesota Transfer railway and of the nine proprietary roads. Bills of lading of

LCL shipments originating at Minnesota Transfer station are made out by him as agent of the railroad to which Minnesota Transfer railway delivers them for carriage. He accounts to such carrier for freight charges he collects on such shipments.

Each of the owner lines has freight terminals in St. Paul and Minneapolis. These are stations distinctly separate from Minnesota Transfer station.

In July, 1936, the general superintendent of the Minnesota Transfer railway gave notice to all shippers that the Charles street and East Hennepin avenue freight houses were to be closed August 1, 1936, and that thereafter Minnesota Transfer was to be an open station for the receipt and delivery of carload freight only. They were instructed to call on the proprietary lines for the pickup and delivery of all LCL shipments under the so-called store-door tariff which went into effect January 20, 1936. All LCL business under this plan would be transacted through the freight stations of the proprietary roads in Minneapolis and St. Paul.

Acting on its own motion, the Minnesota railroad and warehouse commission ordered the general superintendent of the Minnesota Transfer railway to show cause why the notice of the closing of the freight houses should not be canceled. Following the hearing, the commission made findings that the Charles street and East Hennepin avenue freight houses are owned and operated by the Minnesota Transfer railway and are adjacent to the tracks of that company; that the annual business from outgoing and incoming traffic at each freight house is in excess of $8,000 annually; and that each freight house is a "station" within the meaning of 1 Mason Minn. St. 1927, § 4887. Pursuant to these findings it ordered that these freight houses continue to be operated and maintained as they had been in the past until a further order be made by the commission upon a proper statutory application by appellant for an order permitting the closing of the freight houses. As indicated, this order was affirmed on appeal to the district court.

Appellant contends (1) that in the exercise of its managerial discretion it could lawfully close the freight houses in question in the absence of a valid order of the commission, and (2) that there

is no valid statute or prior order of the commission forbidding such closing.

1. The first question for determination is whether the East Hennepin avenue and Charles street freight houses are "stations" within the meaning of 1 Mason Minn. St. 1927, § 4887. This section reads:

"When the annual business from outgoing and incoming traffic at any station amounts to eight thousand dollars or more, such company shall keep an agent at such station during the business hours of each business day; and no station shall be abandoned, nor the depot removed, nor an agent withdrawn therefrom without the written consent of the commission. The commission may by written order authorize the withdrawal of such agent at stations where the business is periodical, during such time as there is no business thereat, or the abandonment of any station where the business from outgoing and incoming traffic is less than fifteen hundred dollars for any consecutive three months."

The statute does not define a station, and so we have no statutory explanation as to the part of the facilities the legislature intended to be within the meaning of the term. The word "station" is used in many sections of the statutes.

1 Mason Minn. St. 1927, § 4762, requires common carriers to provide platforms suitable and convenient for loading and unloading heavy machinery and other freight. In villages containing 250 inhabitants or more the statute is mandatory; at other stations or sidings it is discretionary with the commission to order such platform.

Section 4889 authorizes and empowers the railroad and warehouse commission on complaint made and after a hearing to order a railroad company to provide electric lights and lighting in every railroad station on its lines.

Section 4890 reads:

"Any railroad company maintaining waiting rooms at their stations in this state, who shall fail to comply with the provisions of section 1 of this act, shall be deemed guilty of a misdemeanor, and,

upon conviction thereof, shall be subject to a fine of not exceeding one hundred dollars and costs of prosecution."

See also §§ 4895, 4896, 4899, 7526, 7537, 9950, and 10657.

Black's Law Dictionary (1933 ed.) defines "station" as a "place at which both freight and passengers are received for transportation or delivered after transportation." Ballentine, Law Dictionary (1930 ed.) gives the following definition: "The word is used synonymously with the term 'passenger depot,' meaning the place, the grounds and the buildings prepared for and used by the traveling public at such point in waiting for, taking, and leaving the trains, and by the company in operating the road at that point. As to just what constitutes a passenger depot or station at a particular place is a question of fact."

This court has occasionally considered the meaning of the word as used in a statute. Reid v. M. & R. R. Ry. Co. 179 Minn. 110, 228 N. W. 548. In Hamel v. M. St. P. & S. S. M. Ry. Co. 97 Minn. 334, 107 N. W. 139, a station was held to be a place where the public may regularly transact ordinary business with a railroad. It has also been held that stations must be located where the convenience or necessity of the public will best be served. State ex rel. Railroad & Warehouse Comm. v. M. & St. L. R. Co. 87 Minn. 195, 91 N. W. 465, affirmed 193 U. S. 53, 24 S. Ct. 396, 48 L. ed. 614; State ex rel. Railroad & Warehouse Comm. v. G. N. Ry. Co. 123 Minn. 463, 144 N. W. 155. They must be provided with those facilities reasonably necessary to the adequate conduct of the business at those places. Railroad & Warehouse Comm. v. G. N. Ry. Co. 124 Minn. 533, 144 N. W. 771; Zakrzewski v. G. N. Ry. Co. 125 Minn. 125, 145 N. W. 801; State v. G. N. Ry. Co. 135 Minn. 19, 159 N. W. 1089; Citizens of Hines v. Minnesota & I. Ry. Co. 151 Minn. 402, 186 N. W. 797; Abrahamson v. C. N. Ry. Co. 177 Minn. 136, 225 N. W. 94.

A consideration of the various definitions and expressions of the court in the cases referred to leads to the conclusion that the word "station" has no fixed or invariable meaning. It appears to have been the aim of the court to give to the term such meaning as

the legislature intended should be given to it in each particular instance. In railroad parlance the term may have even a broader and more elastic meaning than that given it by the courts in the interpretation of statutes. Hall v. C. B. & N. R. Co. 46 Minn. 439, 49 N. W. 239.

We agree with the conclusions reached by the learned trial court that the East Hennepin avenue and Charles street freight houses are "stations" within the meaning of § 4887. As stated by Judge Loevinger in his memorandum: "A station is within its [§ 4887] terms if it is a place established by a railroad, on its right of way, for the receipt or discharge, or both, of passengers or freight, or both." Regardless of the term used, each of the places in question furnishes station facilities so as to bring them within the meaning of the statute. The annual revenue from traffic at each freight house is admittedly more than the statutory amount of $8,000. We therefore hold the Charles street freight house and the East Hennepin avenue freight house to be stations within the meaning of 1 Mason Minn. St. 1927, § 4887.

■ Appellant contends that the abandonment of the freight houses in question constituted an abandonment of a part of the facilities of Minnesota Transfer station and that the abandonment of such facilities does not constitute the abandonment of the station itself. It further claims that in such a case in the exercise of its managerial discretion it may lawfully close these freight houses. In view of our conclusion that the Charles street and East Hennepin avenue freight houses constitute stations within the meaning of the statute, this question does not require extended discussion.

A railroad company is obligated to provide facilities needful to a reasonable conduct of the business of a public carrier at any place that it holds out to the public as a station. A given service will be deemed essential to the convenience or necessity of the public at a given station either when ordered to be rendered at that station by the railroad and warehouse commission or when the railroad itself recognizes the necessity for the service at that place and supplies the facilities for transacting that sort of business there. In either case, once established, a railroad may not discontinue a given

service at any station on the ground that it is no longer necessary unless the railroad and warehouse commission gives it permission to do so. The convenience of the public and not the profit of the railroad is determinative in that case. State ex rel. Railroad & Warehouse Comm. v. N. P. Ry. Co. 89 Minn. 363, 95 N. W. 297; State ex rel. Railroad & Warehouse Comm. v. N. P. Ry. Co. 90 Minn. 277, 96 N. W. 81.

In this case it is conceded that the railroad company for many years has been furnishing LCL service. It is also conceded that the receipts at such station exceed $8,000. Under those circumstances, in the exercise of its managerial discretion the company cannot close the freight houses in the absence of an order of the railroad and warehouse commission rendered after a hearing. Here there has been no such hearing and order. The commission is correct in requiring the railroad company to operate and maintain the stations in question in the method and manner prevailing prior to the attempted closing until a further order following statutory procedure is entered.

The order appealed from is affirmed.