STEPHEN A. BROWNELL & others *vs.* OLD COLONY RAILROAD COMPANY & another.

Bristol.    May 23, 1895. — June 19, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Statute requiring Railroad Corporation to operate Ferry — Condition Subsequent — Discontinuance of Ferry not an Abandonment — Enforcement of Penalty, which is to go to the Commonwealth.*

Where a railroad corporation whose charter is subject to alteration by the Legislature has, under legislative sanction, acquired an existing ferry franchise as an extension and part of its railroad line, the Legislature may require such railroad corporation and its successors to operate the ferry, though taken by itself alone the ferry is unprofitable; and may authorize this court specifically to enforce the duty of so operating it.

The St. 1894, c. 392, entitled "An Act requiring the Old Colony Railroad Company to operate a ferry across the Acushnet River between the city of New Bedford and the town of Fairhaven," imposed upon the Old Colony Railroad Company an absolute duty of providing and operating a suitable ferry between New Bedford and Fairhaven, whether profitable or not; and a decree may be made ordering it so to do, without in the first instance specifying what kind of a ferry would be suitable.

The St. 1854, c. 124, did not authorize the proprietors of the New Bedford and Fairhaven Ferry to transfer their charter by a deed on condition subsequent; and a deed under said statute is not to be deemed a deed on condition, although

it contains a provision that it is made upon the condition that the grantee and its successors shall at all times discharge the duties and become and remain subject to the liabilities set forth in the charter.

A discontinuance for twenty years of a ferry which is a part of a railroad line, without any formal objection, or steps taken by any officer of the Commonwealth or by others to enforce the operation of the ferry, does not show such acquiescence on the part of the Commonwealth in the abandonment of the ferry as to prevent the Legislature from passing a statute requiring the railroad company to operate it.

The penalty of one hundred dollars a day for each day's delay in operating a ferry, provided in St. 1894, c. 392, entitled "An Act requiring the Old Colony Railroad Company to operate a ferry across the Acushnet River between the city of New Bedford and the town of Fairhaven," cannot be enforced in a suit in equity brought by ten or more citizens of New Bedford or Fairhaven, as therein authorized.

BILL IN EQUITY, filed August 18, 1894, by ten citizens of New Bedford and three citizens of Fairhaven, for the enforcement of St. 1894, c. 392, and the forfeitures prescribed therein, entitled "An Act requiring the Old Colony Railroad Company to operate a ferry across the Acushnet River between the city of New Bedford and the town of Fairhaven." The defendant, in its answer, did not allege any intent or effort to obey the statute, but denied its validity, and set up the order of the Railroad Commissioners of October 29, 1894, prescribing February 1, 1895, instead of August 1, 1894, as the day after which the defendant should forfeit to the Commonwealth one hundred dollars a day for each day's delay in operating the ferry. The Attorney General, who was made a party, filed an answer, in which he claimed for the Commonwealth any and all penalties to which it might be entitled against the defendant under the statute.* Hearing before *Lathrop,* J., who reserved the case on the pleadings and evidence for the consideration of the full court. The material facts appear in the opinion.

*T. M. Stetson & L. LeB. Holmes,* for the plaintiffs.

*J. H. Benton, Jr.,* for the railroad company.

ALLEN, J. By St. 1854, c. 124, the proprietors of the New Bedford and Fairhaven Ferry were authorized to transfer their charter to the Fairhaven Branch Railroad Company, by deed, which should vest in the latter company all the rights and

---

* The statute and the proceedings before the Railroad Commissioners may be found in the report of the case of *Brownell* v. *Railroad Commissioners,* 163 Mass. 276.

powers conferred by said charter, with a provision that the latter company should be held to perform all the duties prescribed thereby, and that from and after the execution and delivery of the deed the name of the ferry company should be changed, and that the said corporation should afterwards exist and be known by the name of the Fairhaven Branch Railroad Company, and should not be required to hold separate meetings as a ferry company, but that all acts needful and proper to be done should be done at regular or special meetings of the railroad corporation, or by the directors thereof. The deed which was executed under the above statute was expressed to be upon the condition that the railroad company and their successors should at all times discharge the duties and become and remain subject to the liabilities prescribed and set forth in the charter of the ferry company, and also in St. 1854, c. 124. Various intermediate transfers were made, until in 1883, by virtue of St. 1882, c. 80, the Old Colony Railroad Company succeeded to all the franchises and property which had belonged to the Fairhaven Branch Railroad Company. The evidence in the case leaves no doubt, and it is conceded, that after the deed to the Fairhaven Branch Railroad Company the railroad of that company and the ferry became one line, and were operated as such for a number of years. It was the same in effect as if the railroad company by its original charter had been authorized to establish and operate the ferry as a part of its line. The ferry became practically an extension of the railroad, just as if the railroad had been extended over a bridge. The railroad line having been thus extended and operated until 1873, the ferry was in that year discontinued as unprofitable; and by St. 1894, c. 392, the Old Colony Railroad Company was expressly required to provide and operate a suitable ferry, in accordance with the provisions of the original ferry charter and of St. 1854, c. 124.

The first question which we have to determine is, whether this statute is within the legislative power; that is to say, whether a railroad company which owns a ferry as a part of its line, and which is operating the rest of its line, can discontinue the ferry and refuse to obey a legislative requirement to operate it. A railroad company has by no means an absolute power to determine what parts of its line it will operate. Its franchises are

granted for the public good, and in exercising them it is largely subject to the control and direction of the Legislature. Either by virtue of the police power, or of the reserved power to alter charters, many acts may be required which involve expense, and which a railroad corporation, or other corporation to which like rules would apply, would not if left to itself undertake. Numerous illustrations of this are found in the decisions of this court, as well as in those elsewhere. *Roxbury* v. *Boston & Providence Railroad*, 6 Cush. 424. *Commonwealth* v. *Hancock Free Bridge*, 2 Gray, 58, 64. *Fitchburg Railroad* v. *Grand Junction Railroad*, 4 Allen, 198. *Commonwealth* v. *Eastern Railroad*, 103 Mass. 254. *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 446. *Worcester* v. *Norwich & Worcester Railroad*, 109 Mass. 103. *In re Northampton*, 158 Mass. 299, 301. *Union Pacific Railroad* v. *Hall*, 91 U. S. 343. *Railroad Commissioners* v. *Portland & Oxford Central Railroad*, 63 Maine, 269, 277. *State* v. *Hartford & New Haven Railroad*, 29 Conn. 538. *People* v. *Albany & Vermont Railroad*, 24 N. Y. 261. *People* v. *Boston & Albany Railroad*, 70 N. Y. 569. *Montclair* v. *New York & Greenwood Lake Railway*, 18 Stew. 436. *People* v. *Louisville & Nashville Railroad*, 120 Ill. 48. *State* v. *Iowa Central Railway*, 83 Iowa, 720. The present case is merely an instance of compelling a railway company to operate its entire line. The Legislature has seen fit to pass an imperative statute to this effect. In view of this statute, it is not open to the railroad company to determine that the ferry should be discontinued while all the rest of its various lines are operated. The defendant appears to rely on *Commonwealth* v. *Fitchburg Railroad*, 12 Gray, 180, as sanctioning a contrary doctrine. But in that case there was no statute requiring that the railroad company should run the unprofitable trains. There is nothing in the decision which declares or implies that the Legislature might not have imposed this as an absolute duty. The same thing may be said of *People* v. *Rome, Watertown, & Ogdensburg Railroad*, 103 N. Y. 95, and *People* v. *New York, Lake Erie, & Western Railroad*, 104 N. Y. 58.

The defendant contends that St. 1894, c. 392, did not impose a new obligation on the defendant, but only required the defendant to perform such obligation as the ferry company would have been

under to maintain and operate the ferry if it had not transferred its charter in 1854; and an elaborate argument is made to show that the original ferry company was not bound to maintain the ferry for all time.   But whatever may have been the obligation of the original ferry company, the Fairhaven Branch Railroad Company, when it made the ferry a part of its line, no longer had the power to discontinue the ferry provided the Legislature expressly required that it should be operated.   And we are unable to give to the statute of 1894 the construction suggested by the defendant.   This statute makes it the imperative duty of the defendant to operate the ferry, whether it is profitable or not.

The defendant contends that the statute requires it to provide and operate a " suitable " ferry, and that there is no proof before the court upon which it can be definitively decided what kind of a ferry is suitable.   We think, however, that an order to provide a suitable ferry is sufficient in the first instance, and that, if complaint is made that a ferry-boat which may be provided is not suitable, a further application may be made to the court.

The defendant further contends that the requirement to operate a ferry forces it into a new business, and that, if the Legislature can require it to operate a ferry for a mile, it could also require it to maintain a line of steamboats to Nantucket.   The only answer which needs to be given to this argument is, that the ferry by legislative authority was adopted by the railroad company as a part of the line of the railroad, and that its subsequent maintenance is no more outside of the business of the railroad company than the maintenance of any other part of the railroad line.

The defendant further contends that the only liability of the defendant for failure to operate the ferry is a liability to forfeit the ferry charter.   This argument cannot prevail since the blending of the ferry franchise with that of the railroad company.

The defendant also contends that it has never acquired the franchise to maintain the ferry.   The ground of this argument is that the deed of the ferry franchise to the Fairhaven Branch Railroad Company was upon condition, and that the deed became void by the failure to perform the duties required by the condition; and, moreover, that in the recent transfers no express

mention has been made of the ferry franchise. But the deed of the proprietors of the ferry to the Fairhaven Branch Railroad Company cannot be considered as technically a deed upon condition subsequent. No clause of re-entry for breach of condition was inserted, and the purpose of the proviso was rather to show that the grantee was to assume and perform the duties prescribed and set forth in the charter. *Rawson* v. *Uxbridge School District*, 7 Allen, 125. *Sohier* v. *Trinity Church*, 109 Mass. 1, 19. *Episcopal City Mission* v. *Appleton*, 117 Mass. 326. No conveyance upon condition subsequent was contemplated by St. 1854, c. 124, or by the vote of the stockholders of the Fairhaven Branch Railroad Company to make the purchase. The effect of the transaction was to transfer the duties from one corporation to another, after which the original corporation had no further interest in the matter, but the railroad company was bound by law to perform all and singular the duties of the ferry company. The ferry company was not authorized to make a conditional transfer. By § 3 of the statute, its only existence after the transfer was as the Fairhaven Branch Railroad Company. Moreover, an estate on condition subsequent is not defeated except by re-entry for breach of condition. No such re-entry has been made in this case, nor is it easy to see how it could be, since the ferry company as a separate corporation has ceased to exist. In reference to the suggestion that no special mention of the ferry franchise has been made in the recent conveyances, it may be said that none need be, since the provisions of St. 1854, c. 124, and the delivery of the deed thereunder. Since that time, the ferry corporation has existed and been known by the name of the Fairhaven Branch Railroad Company, and has been included in all transfers of that company.

The defendant further contends that it cannot be required to maintain the ferry during the term of the lease of its railroads and property to the New York, New Haven, and Hartford Railroad Company. This lease, which was executed in 1893, was not pleaded in defence, and we have no reason to suppose that the omission was through inadvertence. Its admission in evidence was objected to as incompetent and not open, and no motion was made to amend the answer by pleading it. We therefore have no occasion to consider whether the existence of the lease

would exonerate the defendant as lessor from its obligations to the Commonwealth ; respecting which, however, see *Braslin* v. *Somerville Horse Railroad*, 145 Mass. 64 ; *Davis* v. *Providence & Worcester Railroad*, 121 Mass. 134.

The defendant also suggests that any obligation to the Commonwealth to operate the ferry was waived by the acquiescence of the Commonwealth in its abandonment for a period of twenty years after 1873, and also by legislation subsequent to the abandonment in 1873, by which the railroads were permitted to lease and consolidate upon the basis of such abandonment. But no such waiver on the part of the Commonwealth is to be presumed, without the use of language in some statute clearly expressing or implying it.  The omission by officers of the Commonwealth or by others to take steps earlier for enforcing the duty signifies nothing.  No statute has been pointed out showing an intention on the part of the Legislature to waive the performance of it.

The defendant contends that the Legislature could not provide for the specific enforcement of the obligation to maintain the ferry by a suit in court, such as is provided for in St. 1894, c. 392.  The numerous cases already cited in which resort has been had to the courts for the enforcement of similar obligations and duties show to the contrary, and that the forfeiture of the charter is not the only remedy.

Finally, it is contended that the penalty of one hundred dollars a day for each day's delay in operating such ferry cannot be enforced in this suit.  Upon this point the statute is not clear, but we have come to the conclusion that the better construction of the statute is as the defendant contends.  The principal reasons supporting this view are as follows.

The forfeiture of the sum prescribed is to the Commonwealth, but the statute contains no provision making the Commonwealth or any one of its officers a party to the suit which ten or more citizens may bring to enforce the provisions of the act.  The maintenance of the ferry is for the peculiar benefit of New Bedford and Fairhaven, but the citizens of those places have no special interest in the enforcement of the penalty.  The Legislature can hardly have intended that the penalty should be paid to the ten or more citizens who are authorized to file a petition in

equity to enforce the provisions of the statute, yet nobody else is required to be a party plaintiff. The plaintiffs have made the Attorney General a party to represent the Commonwealth. But he is not a financial officer of the State, and we are at a loss to see how he can properly be made a party, or be entitled to appear in his own name to represent the pecuniary interest of the Commonwealth under this statute. The ordinary way of enforcing a penalty which is to go to the Commonwealth is by a proceeding in the name of the Commonwealth, unless some other mode is enacted by statute or established by custom. We have a difficulty in inferring that the Legislature intended that a heavy pecuniary penalty enuring to the Commonwealth should be enforceable by a suit or petition in equity in this court, which suit is instituted, managed, controlled, and subject to be discontinued solely by private citizens who have no interest in such penalty. The provision of the statute that this court should have jurisdiction in equity upon the petition of ten or more citizens of New Bedford or Fairhaven to enforce the provisions of this act is satisfied by holding that it means the provisions requiring the Old Colony Railroad Company to provide and operate a suitable ferry. These citizens may maintain a petition in equity to enforce so much of the statute as concerns the citizens of New Bedford and Fairhaven. The Commonwealth may enforce the penalty which enures to its benefit. This view derives some confirmation from the Pub. Sts. c. 217, § 2, providing that " all fines and forfeitures . . . expressly appropriated to the use of the Commonwealth . . . may, unless otherwise expressly provided by law, be prosecuted for and recovered by indictment in the Superior Court, . . . or the same may be recovered in an action of tort."

The result is, that the plaintiffs are not entitled to a decree for enforcing the forfeiture of one hundred dollars a day to the Commonwealth, but, in the opinion of a majority of the court, they are entitled to a decree requiring the defendant to provide and operate a suitable ferry.

*Ordered accordingly.*