STATE EX REL. WESTERN UNION TELEGRAPH COMPANY v. MINNESOTA TAX COMMISSION.[1]

January 14, 1916.

Nos. 19,652—(252).

**Taxation of telegraph companies — construction of Classification Act — classification of property.**

Laws 1913, chapter 483, classifying for purposes of taxation "all real and personal property subject to a general property tax, and not subject to any gross earnings or other lieu tax," construed and *held* to apply to the property within the state of telegraph companies.

Upon the relation of the Western Union Telegraph Company this court granted its writ of *certiorari* directed to Samuel Lord, J. T. Hale and J. G. Armson, constituting the Minnesota Tax Commission, to review the proceedings of the commission in the matter of the assessment of the telegraph lines and property of relator for the purpose of taxation for the year 1915. Reversed.

*C. M. Ferguson* and *Francis N. Whitney,* for relator.

*Lyndon A. Smith,* Attorney General, and *William J. Stevenson,* Assistant Attorney General, for respondent.

[1] Reported in 155 N. W. 1061.

Bunn, J.

*Certiorari* to review the action of the Minnesota Tax Commission in the matter of the assessment for purposes of taxation for the year 1915 of the property of the Western Union Telegraph Company.

The telegraph company made and filed with the commission the annual statement required by law, showing in detail the property owned by it in this state. After a hearing, the commission determined that the "true cash value of the telegraph lines owned, operated or leased by the Western Union Telegraph Company in the state of Minnesota is the sum of one million four hundred and sixty-eight thousand dollars ($1,468,000)," and assessed the same for purposes of taxation for the year 1915 at the full sum so determined to be the true cash value. It is this action of the commission that relator seeks to have reviewed and reversed by this court.

The question is whether or not Laws 1913, p. 710, c. 483, referred to as the "Classification Act," applies to telegraph companies. If it does not, no fault is found with the valuation fixed by the commission, or with its decision assessing the property of relator at the full valuation. But if the Classification Act applies to the property of telegraph companies, the action of the commission necessarily fails.

Chapter 483, p. 710, Laws 1913, is entitled "An Act to classify property for taxation purposes and to fix the per cent of 'full and true value' at which property in each class shall be assessed." Omitting immaterial portions, the body of the act is as follows:

Section 1. "Classification of real and personal property for taxation purposes. All real and personal property subject to a general property tax and not subject to any gross earnings or other lieu tax is hereby classified for purposes of taxation as follows:"

Class 1. (Iron ore, valued and assessed at 50 per cent of its true and full value.)

Class 2. (Household goods, etc., valued and assessed at 25 per cent of its true and full value.)

Class 3. (Live stock, machinery, unplatted real estate, etc., valued and assessed at 33⅓ per cent of its true and full value.)

Class 4. "All property not included in the three preceding classes

shall constitute class four (4), and shall be valued and assessed at forty (40) per cent of the full and true value thereof.

Section 2. "All acts and parts of acts inconsistent herewith are hereby repealed.

Section 3. "This act shall take effect and be in force from and after January 1st, 1914."

If this act covers the property of telegraph companies, it is plain that such property is within Class 4, and must be valued and assessed at 40 per cent of its full and true value, instead of at 100 per cent thereof, as was decided by the tax commission. If, on the other hand, the act does not cover the property of telegraph companies, such property is to be valued and assessed for the purposes of taxation "at the true cash value thereof" under G. S. 1913, § 2263.

There can be no doubt of the intent of the legislature in passing the so-called "General Classification Act" to classify for purposes of taxation *all real and personal property* within the state that was *subject to a general tax,* and not subject *to any gross earnings or other lieu tax.* Was the property of telegraph companies, when the classification act was passed April 24, 1913, subject to a general property tax? Was such property subject to any gross earnings, *or other lieu tax?* These are the pivotal questions and must be determined from the statute relating to taxation of the property of telegraph companies as it stood at the time the classification act was passed. This statute is found in R. L. 1905, §§ 1032-1034 (G. S. 1913, §§ 2262-2264), which give the law on the subject as it was enacted by Laws 1891, p. 70, c. 8, and has been ever since. After providing that every telegraph company shall make and file annually with the state auditor a verified statement showing the total number of miles owned, operated or leased within the state, the total number of stations and instruments, the total number of miles in each separate line or division with the number of separate wires thereon and the average number of poles per mile, it is provided (G. S. 1913, § 2263):

"Upon receipt of such statement, the auditor shall lay it before the state board of equalization" (now the tax commission), "at its annual meeting. The board shall assess such telegraph lines at the true cash value thereof, and shall also determine the rate of tax to be levied and

collected upon such assessment, which shall not exceed the average rate of taxes, general, municipal and local levied throughout the state. Such tax shall be in lieu of all other taxes, state and local, and shall be payable into the state treasury."

Section 2264 provides the method of collection by the state treasurer.

There is no room for doubt that under this law the property of telegraph companies is "subject to a general property tax." It is equally clear that it is not subject to a "gross earnings" tax. The only difficulty is in deciding whether such property was subject to any "other lieu tax." We think it reasonably plain that by the words "or other lieu tax," as used in the Classification Act, the legislature meant a tax or method of taxation adopted *in lieu* of a general property tax. Were it not for the provision in the act of 1891, carried into the Revised Laws, and existing at the time the classification act was passed, that "such tax shall be *in lieu* of all other taxes, state and local," there could be no reasonable argument made in favor of the position that the property of telegraph companies was subject to any "lieu tax," or was not covered by the Classification Act. But this provision of the prior. law, and the use of the phrase "or other lieu tax" in the Classification Act, gives an opportunity for a very plausible argument in support of the decision of the commission, an opportunity that has been thoroughly taken advantage of by counsel for the state. This argument is, in brief, that the property of telegraph companies has always been in a class by itself for taxation purposes; that taxes in this state, with the exception of inheritance taxes and poll taxes in villages, are all property taxes, though differing in the method of determining the value; that in every law which has provided for a method of determining the value of property for taxation different from the common method of having the local assessor ascertain and report the value, the legislature has said that the tax shall be "in lieu of all other taxes;" that the legislative intent in adopting the Classification Act was to provide a standard of assessing values for local assessors, and not to provide such a standard in cases where the valuation was not fixed by local assessors, but by some special statutory method, or, as in this case, by the tax commission.

It is true that there has always been a statute specially relating to the assessment and taxation of the property of telegraph companies.

By Laws 1867, p. 32, c. 22, such companies paid "an annual tax of forty cents per mile for every mile of route occupied in lieu of all other taxes." From 1881 to 1887, the state board of equalization assessed telegraph lines at their true cash value, and the tax was "in lieu of all other taxes, state and local." From 1887 to 1891, telegraph companies paid a two per cent gross earnings tax, which payment was *in lieu* of all other taxes. In 1891 there was a return to the assessment of the property at its true cash value by the state board of equalization, with the provision that the tax levied "shall be in lieu of all other taxes, state and local." The system of basing the tax on mileage alone would properly fall under the phrase "lieu tax," as clearly does a tax measured by gross earnings, but is there warrant for saying that a general property tax, based solely on an assessment of all the property of the companies at its true cash value, may properly be called a "lieu tax?" Or rather, is it likely that the legislature used the unfortunate phrase in this sense? The provision that a tax provided for shall be "in lieu of all other taxes" has been used in every gross earnings tax law ever passed in this state. It has been an important consideration influencing the courts in sustaining such legislation as a tax upon property, and not upon gross earnings. State v. United States Express Co. 114 Minn. 346, 131 N. W. 489, 37 L.R.A.(N.S.) 1127; S. C. 223 U. S. 335, 32 Sup. Ct. 211, 56 L. ed. 459. Such a provision hardly justifies designating the method adopted as a "lieu tax." It is incorporated in the various laws providing for commuted systems of taxation to make it certain that the system is to take the place of all other methods, that the tax is still a tax upon property, and that there will be no double taxation. In statutes like the law of 1891, providing for the assessment of the property of telegraph companies at its true cash value, the provision that the tax levied on such assessment shall be "in lieu of all other taxes, state and local," would seem to be to make it beyond doubt that there would be no double taxation, no taxing by local authorities in various counties where the property might be found. We do not think it can fairly be said that the property of telegraph companies was, at the time the Classification Act was passed, subject to "any gross earnings or other lieu tax." It was subject to a general tax, the same as all other property, based on an assessment of all the property at

its true cash value. The only difference was that the assessment was made by the state tax commission, instead of by local assessors.

It seems to us that the intention of the legislature, as gathered from the language of the act of 1913, construed in the light of the then existing and past laws, was to classify all property subject to a general tax, except in cases where the property was then subject to a gross earnings or other system of measuring its value different from the usual and direct way of finding the true value in money of the property itself, and levying the tax at a rate "which shall not exceed the average rate of taxes, general, municipal and local, levied throughout the state." It is probably true that at least one object which the legislature had in view in classifying property for the purpose of taxation was to furnish local assessors with a standard of assessing values, thus attempting to remedy an existing evil in the valuation of property by local assessors, and it is true that local assessors had nothing to do with the valuation of the property of telegraph companies, but this consideration is not of controlling force. It is outweighed by the language of the act classifying "all  *  *  *  property, subject to a general property tax." By excepting from the classification property subject to a "gross earnings or other lieu tax," our opinion is that the legislature meant to except property that was subject to a gross earnings tax, or some other method of valuation or taxation, where the law then in force fixed either the method of valuation or the rate. The property of railroad companies, express companies, freight line companies, sleeping car companies, telephone companies and trust companies, was all taxed on a gross earnings basis. The property of vessels navigating international waters was subject to a tonnage tax. Inheritances were taxed at specified rates. Mortgages were subject to the registry tax. Money and credits were subject to tax at a specified rate. Grain in elevators was subject to tax at a fixed rate per bushel. These are all examples of systems of valuation that are vitally different from the usual way of finding the actual cash value of the property and levying the tax at the general rate. Of all these methods of valuation and taxation that are not examples of the gross earnings method, it may with some propriety be said that the property is subject to a "lieu tax."

Other considerations strengthen the view that a classification of the property of telegraph companies was intended. It would have been very easy to have expressed a contrary intent in plain and unambiguous language. If such property is not within the act, it pays a tax double that of the least favored property, iron ore, and two and one-half times that paid by most of the property in the state. While the real and personal property of individuals, and other corporations, including such public service corporations as lighting, heating and power companies, pays taxes on a basis of 40 per cent of its true and full value, the property of telegraph companies pays on an assessed valuation of 100 per cent. This is manifestly unjust, and contrary to the first principles of taxation. It is a settled rule in the construction of tax laws that, where a statute is capable of two constructions and the intent of the legislature is in doubt, such doubt should as a rule be resolved in favor of the taxpayer. 1 Cooley, Taxation, 454; McNally v. Field, 119 Fed. 445; Treat v. White, 181 U. S. 264, 21 Sup. Ct. 611, 45 L. ed. 853.

Our conclusion is that the Classification Act of 1913 applies to the property of telegraph companies. The order of the Minnesota Tax Commission is reversed with directions to assess the property of relator under class 4 of the act at 40 per cent of its true and full value.

HALLAM, J. (dissenting).

I dissent.

A statute in force up to 1913 provided for a general system of taxation by which assessment and levy were made by local officers and the taxpayer paid his taxes to local county treasurers. Under this statute all property was assessed at its true and full value in money. R. L. 1905, § 810.

Another separate and distinct statute provided for the taxation of telegraph companies. It provided that such companies should return to the state tax commission certain information, and that the tax commission should assess the telegraph lines "at the true cash value thereof," and determine the rate of tax to be levied. R. L. 1905, § 1033. The property of such companies, "in part tangible, and as such having a physical situs within a state, and in part intangible, having only a constructive situs therein," was taxed as a system upon a valuation derived

from their connection as a whole "united in use," the state in fact taking a proportion of the value of the whole property of the company in the United States for purpose of taxation in this state.    State v. Western Union Tel. Co. 96 Minn. 13, 24, 104 N. W. 567; State v. Western Union Tel. Co. 111 Minn. 21, 28, 124 N. W. 380, 126 N. W. 403.    The whole tax was paid into the state treasury, and it was provided that such tax shall be "in lieu of all other taxes, state and local."

It appears to me that when, in passing chapter 483, p. 710, Laws 1913, the legislature excepted from its operation property subject "to any gross earnings *or other lieu tax*," it intended to exclude from the operation of that act the property of telegraph companies which was subject to a tax assessed, levied and paid under a system unique in itself, and which the law had designated a tax "in lieu of" all other taxes.