MINNEAPOLIS CIVIC AND COMMERCE ASSOCIATION v.
GREAT NORTHERN RAILWAY COMPANY AND ANOTHER.[1]

May 18, 1917.

Nos. 20,284—(17).

**Railroad and warehouse commission — order canceling switching charge
— finding sustained.**

1. *Held*, following Minneapolis C. & C. Assn. v. Chicago, M. & St. P.
Ry. Co. 134 Minn. 169, that the trial court did not err in refusing to
find that the order of the railroad and warehouse commission abolishing
a switching charge exacted by the Minneapolis Western Railway Com-
pany was unlawful or unreasonable.

**Same — order valid.**

2. The provision of the order of the commission requiring the Great
Northern Railway Company to continue the operation of the Minneapolis
Western line without switching charge for services rendered was
within its authority and jurisdiction.

The Minneapolis Civic and Commerce Association petitioned the Rail-
road and Warehouse Commission of Minnesota to have the commission
determine that the Minneapolis Western Railway Company was a part
of the terminals of the Great Northern Railway Company, and to forbid
the imposition of a switching charge of $1.50 per car upon all inbound
grain delivered upon the rails of the Minneapolis Western Railway Com-
pany; and to require defendants to publish and maintain switching tariffs
applicable to local or industrial traffic which would be fair and reasonable
in and of themselves, the same to apply to and from all industries
served by the Minneapolis Western Railway Company without assess-
ment of separate or additional charge therefor.

The matter was heard by the commission who ordered that the Great
Northern Railway Company and the Minneapolis Western Railway Com-
pany cease from charging $1.50 per car for handling inbound shipments
over the line of the Great Northern Railway Company which are delivered

[1]Reported in 162 N. W. 689, 163 N. W. 294.

by the Minneapolis Western Railway Company to mills or elevators located on its tracks, or from charging any sum for delivery of carload shipments of freight from connecting carriers to the Great Northern Railway or from mills and elevators upon tracks operated by the Minneapolis Western Railway Company to the Great Northern Railway, and that the last named company be required to operate the road as part of its terminal property within the city of Minneapolis. From that order defendants appealed to the district court for Hennepin county. The commission intervened. The appeal was heard before Jelley, J., who affirmed the order of the commission. Defendants' motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, defendants appealed. Affirmed.

*M. L. Countryman, John I. Dille* and *John F. Finerty,* for appellants.

*Lyndon A. Smith,* Attorney General, and *Frank J. Morley,* for respondents.

BROWN, C. J.

Proceedings were duly brought before the state railroad and warehouse commission for the abolition of a switching charge made by the appellant Minneapolis Western Railway Company, and to compel the appellant Great Northern Railway Company, to perform without charge the service theretofore rendered by or in the name of the Western Company. The relief prayed for was granted. An appeal was taken to the district court, where the order of the commission was affirmed, and from the judgment of affirmance an appeal was taken to this court by the Great Northern Company and also the Minneapolis Western Company.

It is contended by appellants: (1) That the order of the commission was unlawful and unreasonable, that the court below erred in not so finding, and that the order and judgment confirming the same violate certain rights granted and secured to appellants by section 10 of article 1 and section 1 of article 14 of the Constitution of the United States, and rights granted and secured to them by various provisions of the Constitution of this state; and (2) that the clause of the order requiring and commanding the Great Northern Company to operate the line of the Minneapolis Western Company, without exacting or demanding a switching charge for services rendered, was without the auth-

ority and not within the jurisdiction of the commission and therefore wholly void.

We discover from the record no substantial difference between this case and Minneapolis C. & C. Assn. v. Chicago M. & St. P. Ry. Co. 134 Minn. 169, 158 N. W. 817. In that case it appeared that the Minneapolis Eastern Railway Company, one of the appellants therein, was a terminal switching company, with limited trackage and limited equipment, sufficient however for the purposes of the company. The company was taken over immediately after its formal organization, by the joint action of the Chicago, Milwaukee & St. Paul Railway Company and the Chicago, St. Paul, Milwaukee and Omaha Railway Company, and by those companies constructed and equipped for the purpose of serving their lines as a local switching facility in the city of Minneapolis, in the movement of cars to and from certain industrial centers therein. The stock of the company was taken in equal shares by the two railroads, and they at all times jointly controlled the organization and the conduct of its affairs. The revenue of the company was derived solely from the services rendered in its switching operations, and therefrom the expense of the company was paid, the balance of income being divided equally between the two railroad companies. In the case at bar, the Minneapolis Western Railway Company is also a terminal switching company, originally organized by certain milling interests of Minneapolis, for the purpose of moving cars to and from those industries. Like the Minneapolis Eastern Company, involved in the other case, its trackage was limited and also its equipment, being sufficient however for its purposes. The corporation was so organized many years ago, and continued to operate within its charter powers as an independent concern until December, 1892, when the Great Northern Railway Company purchased all the stock thereof, and thus became the sole owner and assumed the exclusive control of its affairs. The Great Northern Company acquired the road and makes use of the trackage thus obtained as a terminal switching facility, and for the movement of cars from its main line or "breaking up" yard to and from the milling districts of Minneapolis. Both companies maintained their separate and independent organization, and continued until interrupted by the order here complained of to charge and collect for services rendered in switching operations. The

money so collected went first to pay the expense of operation, the surplus going to the Great Northern Company.

We recognize no material distinction in the facts of the two cases. The manner in which each was organized and equipped, the Eastern Company by the two railroad companies, and the Western Company by the millers, and later absorbed by the Great Northern Company, is not a differentiating fact. Neither can the method of operation, the indebtedness incurred, the character of the equipment, or extent of the system of tracks, differentiate the cases. The controlling facts are that both companies were organized for the same purpose, and are now owned and controlled by the railroad companies for switching purposes. And the question whether the commission was right or wrong in the order abolishing the switching charges heretofore made and collected by each railroad company, through the agency of the switching companies, is the same in both cases.

We therefore follow and apply the decision in the former case, and hold that there was no error in the refusal of the court below to find that the order was unreasonable or unlawful, and no error in the conclusion that the constitutional rights of appellants, either as granted by the Federal or state Constitutions, were in any way infringed or violated.

2. The second contention does not require extended discussion. The question whether the commission exceeded its authority and jurisdiction in ordering and directing the Great Northern Company to continue to operate the switching road without charge, was involved in the other case, but not raised or expressly decided. It is raised and discussed in this case, and we are asked to decide it. The other case has been removed by writ of error to the Supreme Court of the United States, and no doubt when it comes to a hearing therein the question will be presented for the consideration of that court. If the case involves any Federal question, this particular question will partake of that nature equally with all others, and since this case, as we are advised, will be removed to that court, and submitted with the former, we are reluctant to offer any suggestions upon an issue which the higher court has exclusive jurisdiction to determine. We therefore hold without discussion that the part of the order referred to was within the authority and

jurisdiction of the commission, and the enforcement thereof will invade none of the constitutional rights of appellants.

Judgment affirmed.

On June 15, 1917, the following opinion was filed:

BROWN, C. J.

In disposing of this case by the opinion recently filed we assumed that the order of the commission must stand or fall in its entirety, and that the part thereof commanding the Great Northern Company to continue the operation of the switching road was so far essential to the effectiveness of the order as to render it as much obnoxious to the rights reserved to appellants by the Federal Constitution as the part abolishing the switching charge. And it was upon that theory, for the reasons stated in the former opinion, that we disposed of the contention that the particular part of the order was beyond the authority and jurisdiction of the commission without discussion. We may have been in error in so treating that part of the order. At any rate, appellants in an application for a rehearing now disclaim any right to challenge that feature of the order as violating any of their rights under the Federal Constitution, and that no such question was intended to be raised by them.

We accept this as the correct status of the case as presented but see no reason for a reargument. The particular question, namely, whether the commission had authority and jurisdiction to include in the order a command that the Great Northern Company continue to operate the switching road, was fully argued when the cause was submitted, is carefully covered by the briefs on file, and further oral argument would serve no useful purpose. We adhere to the conclusion that there is no substantial difference between this and the case of the Minnesota Eastern Company, referred to in the former opinion. And our reasons for the conclusion upon the question whether the particular part of the order was within the authority of the commission may be stated briefly.

The Railroad and Warehouse Commission is clothed by the act creating it, and by the various statutes defining its authority and jurisdiction, with general supervision of all railroads operating within this state. Much of the jurisdiction thus conferred is by specific legislation, though the full scope of its authority is not confined to those things

which are specifically provided for. The commission may make such orders applicable generally to the railroad service as public interests may from time to time require. Of this there can be no serious doubt. 2 Dunnell, Minn. Dig. § 8075; State v. Chicago, M. & St. P. Ry. Co. 38 Minn. 281, 37 N. W. 782. The Great Northern Railway Company is a Minnesota corporation, operating under the franchise granted by the territory to, and as the successor of, the Minnesota & Pacific Railroad Company, by which it is obligated to construct, maintain and operate a complete railroad system within the state, of which switching yards and switching tracks form an essential part. It has constructed that system and maintains and operates the same in and through the state. The Minnesota Western Railway Company is also a Minnesota corporation, and constructed the switching line in question to serve the purposes stated in the former opinion. The necessary result of the findings of the commission is that the switching road, its tracks and equipment, by the facts stated in the former opinion, become and now form a part of the general system of the Great Northern Company, with the switching company holding the legal title to the property as a mere convenience. The findings of the commission in this respect are sustained by the evidence. Since the switching road is a part of the general system of the Great Northern Company, that company may be compelled by the commission to operate it precisely as the commission might order and require the company to operate any other part of its railroad system. State v. Northern Pac. Ry. Co. 89 Minn. 363, 95 N. W. 297; Gates v. Boston & N. Y. A. L. R. Co. 53 Conn. 333, 5 Atl. 695; Attorney General v. West Wisconsin Ry. Co. 36 Wis. 466; Brownell v. Old Colony Ry. Co. 164 Mass. 29, 41 N. E. 107, 29 L.R.A. 169, 49 Am. St. 442; State v. Sioux City & Pac. R. Co. 7 Neb. 357. It is clear within the rule applied in the Northern Pacific case cited that the Great Northern Company could not abandon this part of its system without the consent of the railroad commission. And, if consent to such an abandonment is necessary, the commission may anticipate a possible attempt to abandon by an order to continue the operation. The question is no different than it would be had the Great Northern Company actually constructed the switching tracks in question and thereby originally made them a part of the general system. The argument of counsel that this wholly over-

looks the legal entity and legal existence of the separate corporations, depriving each of the right to conduct its affairs in its own way is forceful and not without merit. But the argument must yield to the controlling fact that the switching company has been wholly absorbed and its independent existence, other than in name, effectually and for all practical purposes brought to an end.

The question requires no further elaboration. If the position stated is sound the validity of the order follows as a natural sequence.

Application for a rehearing denied.