# IN RE PAYMENT PERSONAL PROPERTY TAXES.

## STATE v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

April 5, 1918.

No. 20,387.

**Railway — gross earnings tax — stock and debt of foreign corporation not taxable.**

In a proceeding to enforce personal property taxes against the defendant railway company it is *held*:

(1) That certain corporate stocks and bonds and other corporate indebtedness were owned and used by the company for railway purposes within the meaning of the gross earnings statute; and that a tax upon

[1]Reported in 167 N. W. 294.

such property is paid in the gross earnings tax and an ad valorem tax cannot be imposed.

(2) That certain stock in a foreign corporation, and an indebtedness owing by a foreign corporation, owned by the defendant, a foreign corporation, having its traffc and operative offices in Minnesota, such stock and indebtedness not being used in Minnesota nor arising from a transaction had there, and held in another state where the defendant has a financial and business office, under the facts detailed in the opinion, had no taxable situs in Minnesota.

In proceedings in the district court for Ramsey county to enforce payment of personal property taxes remaining delinquent and unpaid on April 1, 1916, defendant interposed an answer which alleged that it was a foreign corporation, duly licensed to do business in the state of Minnesota, and certain specified bonds and certificates of stock held by it and certain moneys advanced by it to specified railway and other companies, and the papers evidencing the obligations, all of which were assessed as taxable on May 1, 1915, were kept at the defendant's headquarters in the city of New York, none had ever been kept within the state of Minnesota and none were connected with the business transacted by it in that state; that such securities represented properties and rights necessary and convenient to defendant company in carrying on its transportation business among the states; that all the properties and rights were instrumentalities of interstate commerce and not being located within Minnesota, nor pertaining to business in that state, taxation thereof in Minnesota was a regulation of commerce among the states and imposed an unlawful burden on such commerce contrary to the Constitution of the United States. The matter was heard before Michael, J., who made findings and ordered judgment in favor of defendant. Plaintiff's motion for amended findings and conclusions or for a new trial was denied. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*Lyndon A. Smith,* Attorney General, *Egbert S. Oakley,* Assistant Attorney General, *Richard D. O'Brien,* County Attorney, and *Patrick J. Ryan,* for appellant.

*Charles W. Bunn* and *Cordenio A. Severance,* for respondent.

DIBELL, C.

This is a proceeding against the Northern Pacific Railway Company to collect personal property taxes delinquent in Ramsey county. There were findings and judgment for the defendant and the state appeals.

The property sought to be taxed consists of corporate stocks and bonds and other corporate indebtedness owned by the company. The trial court held it all nonassessable, either because it was railway property within the gross earnings tax statute or because it was without a taxable situs in Minnesota. The important questions are:

(1) Whether certain corporate stocks and bonds and other corporate indebtedness were in the sense of the gross earnings tax statute property owned or operated by the company for railway purposes, the tax upon which was paid when the company paid its gross earnings tax, and therefore not subject to an ad valorem tax.

(2) Whether certain property, not railway property within the meaning of the gross earnings law, had a taxable situs in Minnesota.

1. The Northern Pacific system extends from Lake Superior to the Pacific and has various lines and branches in Wisconsin and Minnesota and the states to the west and in Canada. It pays a gross earnings tax in Minnesota. This tax is a tax on the property of the railway owned or operated for railway purposes and is measured under statutory authority subject to constitutional limitations by a fixed percentage of gross earnings. Const. art. 4, § 32a; art. 9, § 1; G. S. 1913, § 2226, et seq. It is still a tax upon the property of the railroad owned or operated for railway purposes so far as within the taxing jurisdiction of the state and not a direct tax on earnings. State v. U. S. Exp. Co. 114 Minn. 346, 131 N. W. 489, 37 L. R. A. (N.S.) 1127 and cases cited; State v. Northwestern Tel. Exch. Co. 107 Minn. 390, 120 N. W. 534; State v. Minnesota Tax Commission, 132 Minn. 93, 155 N. W. 1061; U. S. Exp. Co. v. Minnesota, 223 U. S. 335, 32 Sup. Ct. 211, 56 L. ed. 459. Nothing in the law prevents the imposition of an ad valorem tax upon property not taxed by the gross earnings tax. Whether property is owned or operated as railway property within the sense of the statute often involves a question of fact. City of St. Paul v. St. Paul, M. & M. Ry. Co. 39 Minn. 112, 38

N. W. 925. So far as here a question of fact it is resolved against the state by the findings of the trial court.

The securities sought to be taxed and held not taxable because owned and used for railway purposes need not be enumerated. A reference to a few indicates sufficiently the character of all. The defendant jointly with the Great Northern Railway Company owns a majority of the stock of the Chicago, Burlington & Quincy Railroad Company. Through their stock ownership they exercise a joint control and through trains and traffic pass from the two roads to the large traffic centers on the Burlington route. They have as definite control as if they owned in common. While not a fact important in this litigation it is a conceded one that the control of the Burlington has resulted in a large increase in the gross earnings of the two roads and a consequent increase in revenue to the state. Jointly with the Great Northern it financed the Spokane, Portland & Seattle Railroad Company and the two companies own its stock and bonds. Each company operates its trains over it. Either jointly with the Great Northern, or alone, it has a controlling or substantial interest in the stock or bonds of a number of railroads which are operated as branches or feeders or as terminals for its system. To a considerable extent, and in keeping with common railway practice, it has financed many of these subsidiary companies, taking their stock and bonds, or has acquired control through stock purchases. In connection with the Union Pacific it aided the construction of a fruit storage warehouse in the Yakima Valley in Washington and took bonds of the warehouse company. The warehouse serves the two companies and is a facility proper to be furnished in connection with railway transportation and is so used.

The various railroads to which the securities pertain are integral parts of the railway system of the defendant. They were not acquired and are not held for investment. They were acquired and are kept that the company may have the use for railway purposes of the physical property to which they pertain.

In determining whether these items of property are railway or nonrailway, substance and not form controls. Stock ownership does not give title to the corporate property but majority ownership gives control and ownership of less may be effective. State v. Chicago & N. W. Ry. Co. 133 Minn. 413, 158 N. W. 627, L. R. A. 1916E, 1288, and cases cited;

Minneapolis C. & C. Assn. v. Chicago, M. & St. P. Ry. Co. 134 Minn. 169, 158 N. W. 817; Minneapolis C. & C. Assn. v. Great Northern Ry. Co. 137 Minn. 10, 162 N. W. 689, 163 N. W. 294; Pearsall v. Great Northern Ry. Co. 161 U. S. 646, 16 Sup. Ct. 705, 40 L. ed. 838; U. S. v. Union Pac. R. Co. 226 U. S. 61, 33 Sup. Ct. 53, 57 L. ed. 124; U. S. v. Delaware, L. & W. R. Co. 238 U. S. 516, 35 Sup. Ct. 873, 59 L. ed. 1438. The statutes of the state, and railway statutes generally, authorize the acquisition for railway purposes of stocks and bonds. An investment is not intended but a use for railway purposes. If the company had acquired another road or branch or feeder or terminal, or an undivided interest, or a right to use, by direct purchase, it would satisfy the tax demands of the state when it paid its gross earnings. Here the situation is hardly different if we go to the substance of things; and it is clearly not of consequence that the control is not several but joint, or even that it is not joint, if through the securities the company in a practical way adds a railway operation to its system. No case controlling in its facts is found. Upon some of the features of the case State v. St. Paul Union Depot Co. 42 Minn. 142, 43 N. W. 840, 6 L.R.A. 234, is interesting. We hold with the trial court that taxes were paid on property of the character described when the company paid its gross earnings and that it is not subject to an additional ad valorem tax. The question presented and discussed is one of interest but not of doubt.

2. The defendant owns stock of the Colorado & Southern Railway Company which was purchased as an investment. It owns an indebtedness of the Ruth Realty Company, an Oregon corporation, apparently evidenced by notes. This indebtedness arose through an advance made by the railway company to aid the realty company in holding certain lands which the railway company had in view for future acquisition for terminals. The defendant does not claim that either of these items is exempt from an ad valorem tax because devoted to railway uses; but it claims that neither has a taxable situs in Minnesota. The trial court found that there was not a taxable situs in the state.

The defendant is a Wisconsin corporation. The Superior & St. Croix Railroad Company was incorporated by the legislature of that state by P. & L. Laws 1870, c. 326. The charter was several times amended and the last time by Laws 1895, c. 244. In 1896 its name was changed by

corporate action to Northern Pacific Railway Company. It acquired at foreclosure sale the properties of the Northern Pacific Railroad Company which was chartered by Congress in 1864. It has filed its charter with the secretary of state of Minnesota and is licensed to do business in the state. Its general traffic and operative office is in St. Paul. From there its general operative and traffic business is conducted though it has other centers of operative activity and direction in states to the west. It has an office in New York. Its corporate books and its corporate seal and the office of its secretary and other executive offices are there. Its stockholders and directors and executive committee meet there. Its general financial and railway policy is determined there and the corporate acts usually had in the state creating the corporation are executed there. All of its securities are kept there. It has bank deposits there. None of the meetings of its stockholders or directors are held in Wisconsin. It has no general office there. It does no business there except that connected with its line of railroad extending from Superior. Aside from this it has only such connection with Wisconsin as the laws of the state require of a corporation which it creates.

The Colorado Southern and the Ruth Realty Company are foreign corporations. Neither has a place of business or transacts business in the state. Neither the stock nor the indebtedness sought to be taxed was ever used in Minnesota. Neither piece of property comes from any transaction had in Minnesota. Neither has any connection with the operative or traffic business of the company. Neither has been given a business situs in the state by the company within such cases as In re Jefferson, 35 Minn. 215, 28 N. W. 256, Bristol v. Washington County, 177 U. S. 133, 20 Sup. Ct. 585, 44 L. ed. 701, and innumerable others of like character. If dividends are paid on the stock or interest on the indebtedness they will be received in New York and used or reinvested there, and, if the stock is sold or the indebtedness paid, payment will be made there and the disposition of the proceeds will be determined there.

The question of taxable situs is often a vexing one and it is particularly so where the corporation sought to be taxed has its statutory domicile in one state, with which its connection is nominal, and definite physical locations and extensive business and industrial operations in others, and in another a business location where its policy is determined

and its financial operations are conducted and its corporate acts usual to the state of its creation are executed. The notion that personal property follows the owner and that his domicile fixes the taxable situs of his intangible property is a fiction which yields to fact and to practical considerations of justice in taxation and the owner by the use to which he puts his property may give it a location elsewhere. Metropolitan Life Ins. Co. v. City of New Orleans, 205 U. S. 395, 27 Sup. Ct. 499, 51 L. ed. 853. The owner of stock in a foreign corporation is subject to taxation in the state of his residence if the state chooses to tax it. Hawley v. City of Malden, 232 U. S. 1, 34 Sup. Ct. 201, 58 L. ed. 477, Ann. Cas. 1916C, 842. The fact of residence of the owner is not a negligible one in determining the place of taxation of intangibles. That is the natural place of taxation. Situs can be fixed in Minnesota only because the company has its general operative and traffic offices there. All other facts affecting situs, and they have been enumerated in some detail, negative the existence of situs in Minnesota. A review of the cases, which are numerous and variant in their facts, would not be attended with profit. See 15 Columbia Law Rev. 377; 16 Columbia Law Rev. 137; note to Liverpool & Co. v. Board, 221 U. S. 346, L.R.A. 1915C, 903, 914-944; 1 Cooley, Tax. 658; Gray, Lim. Tax. §§ 85-100; Beale, Foreign Corp. § 501, et seq.

The state cites State v. Northern Pacific Ry. Co. 95 Minn. 43, 103 N. W. 731. It was there the opinion of the court that a land contract for the sale of land partly in Minnesota and one for the sale of land in North Dakota had a taxable situs in this state. From the syllabus and from the cases cited it seems that the view was that a situs had been given them in the state within such cases as In re Jefferson, 35 Minn. 215, 28 N. W. 256, and like cases. The question mostly considered was a different one. The records in the two cases are entirely unlike and the case is not controlling.

Conceding that a corporation might so abandon the state which created it and so engage its activities in another state that the situs of all its intangible property for purposes of taxation would be referred to the latter, though not localized there for actual use, the record does not put the situs of the stock and indebtedness under consideration in Minnesota. We reach the conclusion that with the facts as we have stated

them, and as found by the trial court, the stock of the Colorado Southern and the debt owing by the Ruth Realty Company have no taxable situs in the state. This accords with the trial court's view.

Judgment affirmed.

Bunn, J., took no part.